Vincent R. Ewald, Plaintiff-Appellant, v. Edward E. Roelofs, Leland H. Rayson, Palos-Worth Press, Inc., an Illinois Corporation, Ilene Merrifield, et al., Defendants, Leland H. Rayson, Edward E. Roelofs, Palos-Worth Press, Inc., an Illinois Corporation, Bernie McCarty and Roger Culp, Defendants-Appellees.

### Gen. No. 53,223.

First District, Fourth Division.
January 28, 1970.

Vincent R. Ewald, of Oak Lawn (Galgano & Barton, of Chicago, of counsel), appellant.

Brunswick, Beemsterboer & Jemilo, of Blue Island (Joseph E. Brunswick, of counsel), for appellees.

MR. PRESIDING JUSTICE STAMOS delivered the opinion of the court.

Plaintiff, Vincent R. Ewald, a licensed attorney, filed a libel action against defendants. After defendants' motion to strike the complaint was sustained, plaintiff was given leave to file an amended complaint. Upon plaintiff's motion all named defendants were dismissed except appellees Rayson, Roelofs, Palos-Worth Press, Inc., Bernie McCarty and Roger Culp. The 18-count amended complaint consisted of nine odd-numbered counts alleging libel of plaintiff in his profession as a licensed attorney-at-law and nine even-numbered counts alleging libel of plaintiff in his capacity as Village Attorney for the Village of Hickory Hills and attorney for the Village of Worth. Defendants moved to strike the amended complaint for failure to state a cause of action. The trial court sustained the motion and dismissed the suit. Plaintiff appeals.

Plaintiff in this court abandoned the nine odd-numbered counts alleging libel in his profession as a licensed attorney-at-law in view of Tunnell v. Edwardsville Intelligencer, Inc., 99 Ill App2d 1, 241 NE2d 28, revd on other grounds, 43 Ill2d 239, 252 NE2d 538 (1969). Plaintiff now relies on the nine even-numbered counts alleging libel in his capacity as municipal attorney and concedes that their legal sufficiency must be measured in light of New York Times Co. v. Sullivan, 376 US 254, 11 L Ed2d 686 (1964) and Coursey v. Greater Niles Tp. Pub. Corp., 40 Ill2d 257, 239 NE2d 837 (1968), affg 82 Ill App2d 76, 277 NE2d 164 (1967).

Paragraphs 1–5 of Count I of the amended complaint are incorporated by reference into all nine of the even-numbered counts. The plaintiff therein alleges that de-

31

fendant Palos-Worth Press, Inc. publishes the Worth-Palos Reporter, a newspaper of general circulation in Worth having a circulation of approximately 14,200; that at all times mentioned defendants Roelofs and Rayson were copublishers of the Worth-Palos Reporter and defendants Culp and McCarty were employees.

Plaintiff further alleges that he is a licensed attorney of the State of Illinois maintaining an office in Chicago and Oak Lawn, and that he has always conducted and demeaned himself with honesty and fidelity and has never been guilty nor suspected of being guilty of any misconduct or malpractice in his said capacity and profession, thereby enjoying a good name and reputation as an attorney. The complaint further alleges that plaintiff served as Village Attorney of the Village of Hickory Hills from May 25, 1961, to April 30, 1967, and is now serving as attorney for the Village of Worth, said duties having commenced on May 4, 1965.

Count II further alleges that on July 14, 1966 defendants published the article referred to as Exhibit 10 which stated:

> "It is my opinion, the self-interested attorney and the power-hungry president are so bedazzled by their position, they automatically throw their weight around by turning a deaf ear to the 'masses.' Somewhere it is written, 'Power Corrupts.'
>
> "We shudder when the names Castro, Mao Te Sung, and Viet Cong are mentioned. These names represents [sic] forms of government that are abhorrent to decent freedom loving people.
>
> "The present governing body of Hickory Hills is every bit as abhorrent as those in far away lands."

Plaintiff alleges that he was the attorney for the Village of Hickory Hills at the time the article was published and that being equated to Castro, Mao Te Sung

and the Viet Cong was false and defamatory and "... was made maliciously by the said defendants in a deliberate attempt to injure the plaintiff and prejudice him in his character, reputation and good standing as a municipal attorney. . . ." Damages of $100,000 are alleged.

Count IV further alleges that on October 6, 1966 defendants published the article referred to as Exhibit 13 which stated:

> "President John Boyce was also called in and he took village attorney Vincent Ewald along for legal counsel. Ewald advised Boyce not to sign an affidavit or complaint and he didn't sign.
>
> "Vincent Ewald, as village attorney, after an unanimous vote by the village board requested a thorough investigation, was duty bound to help the State's Attorney to clear up the alleged charges of shakedown. Instead, he told Boyce not to do a thing to help clear up the scandal, and Boyce took his advice. This was a definite move to block the investigation.
>
> "Was Vincent Ewald there as the private attorney for John Boyce? We doubt it, but if he was the village shouldn't pay him, and he violated his trust to the village.
>
> "Was Vincent Ewald there as the official attorney for the village of Worth? If so, he very definitely abused the order to help clear up the scandal.
>
> "Was Vincent Ewald there as a politician, himself involved in the scandal?
>
> "Can you imagine Ewald saying to John Boyce— 'John, why did you ever tell the State's Attorney's office that the contractor told you about the 2% shakedown attempt?' Boyce says, 'because it was the truth.' Ewald: 'What's truth? In the future keep

your mouth shut and I'll tell you what the truth is.' "

Plaintiff alleges that he was the attorney for the Village of Worth at the time the article was published and that being so depicted was false and defamatory and ". . . was made maliciously, with knowledge that said statements were false in a deliberate attempt to injure the plaintiff and prejudice him in his character, reputation and good standing as a municipal attorney. . . ." Damages of $100,000 are alleged.

Count VI further alleges that on October 20, 1966, defendants published the cartoon referred to as Exhibit 15. The cartoon entitled, "Playing Around with the Law," depicted plaintiff standing over a large table and altering by pen the provisions of Ill Rev Stats, c 46, § 28–1, the referendum statute, while the State's Attorney and Better Government Association looked on with disdain. Plaintiff alleges that the publication of the cartoon was false and defamatory and ". . . was made maliciously by the said defendants in a deliberate attempt to injure the plaintiff and prejudice him in his character, reputation and good standing as a municipal attorney. . . ." Damages of $500,000 are alleged.

Count VIII further alleges that on October 27, 1966, defendants published the article and cartoon referred to as Exhibit 16 and that defendant McCarty was the person who drew the cartoon. The cartoon depicted plaintiff avariciously clutching a large bag of money labeled, "5 Figure Legal Fees on Big Bond Issues." Plaintiff alleges that the publication of the cartoon was false and defamatory and ". . . was made maliciously, with knowledge that said statements were false in a deliberate attempt to injure the plaintiff and prejudice him in his character, reputation and good standing as a municipal attorney. Damages of $500,000 are alleged.

34

Count X further alleges that on October 27, 1966, the defendants published the article and cartoon referred to as Exhibit 16 which stated:

> "Estimate of legal fees in Hickory Hills since Vince Ewald came to town range from $51,000 to over $90,000. Involved in the water supply line now proposed by Petkiewicz-Ewald is a legal fee of $40,000 to $60,000. Temporarily, at least, the public has blocked the million dollar special assessments for roads plan—this plan has a gold lined legal fee of from $60,000 to $100,000—and this one could come alive anytime. Let's forget about the fantasy these boys once had, a golfcourse bonanza. None of this includes the political donations developers have complained about."

Plaintiff alleges that the fees were grossly exaggerated by a factor of from three and one-half to five times the amount normally paid and that the exaggeration was made ". . . deliberately and maliciously in an attempt to injure the plaintiff and to prejudice him in his character, reputation and good standing as a municipal attorney. . . ." Damages of $500,000 are alleged.

Count XII further alleges that on December 22, 1966, the defendants published an article referred to as Exhibit 24 which stated:

> "So far Attorney Ewald's advice has cost the Village of Worth an estimated $615,000 (for nothing —for sheer waste—for hanky-panky—for politics— for incompetence).
>
> "Is it true that the Worth water system is costing (or losing) $615,000? Well, let's look at a few facts. Last April 19 the Worth Board awarded the water bonds to McDougall and Condon at 4.62% interest

and 2½% discount, and at that time there was a market for bonds. But 'hanky-panky' Ewald called a special meeting the next night and had all bids thrown out. The bonds haven't been sold to this day, while the bond market has been going up, and the combined rate of interest plus discount on revenue bonds is now about 6%. The present bond cost over a 40-year period will add a cost to the water users of $587,000.—Ask your banker or accountant. Add to this the simple fact that the village has agreed to overpay Ewald for his (bad) advice $25,000—the loss is over $615,000."

Plaintiff alleges that he was attorney for the Village of Worth at the time the article was published and that the article was false and defamatory, and ". . . was made maliciously, with knowledge that said statements were false in a deliberate attempt to injure the plaintiff and prejudice him in his character, reputation and good standing as a municipal attorney . . . ." Damages of $100,000 are alleged.

Count XIV further alleges that on January 12, 1967, the defendants published an article referred to as Exhibit 27 which stated:

"4 Parties Enter H. H. City Election"

"The REPORTER has on occasion observed that Vincent Ewald is a master at creating political confusion, particularly in Hickory Hills. But the present confusion, with four political parties entering candidates in the city election this spring, cannot be credited to Mr. Ewald, although it is a situation which must delight his little scheming mind."

Plaintiff alleges that he was the attorney for the Village of Hickory Hills at the time the article was published and that it was false and defamatory and ". . . was made maliciously, with knowledge that said state-

36

ments were false in a deliberate attempt to injure the plaintiff and prejudice him in his character, reputation and good standing as a municipal attorney. . . ." Damages of $100,000 are alleged.

Counts XVI and XVIII further allege that between February 24, 1966, and March 30, 1967, articles referred to as Exhibits 1 to 39a were published by the defendants and that all of the articles were part of an organized plan and program to destroy the plaintiff's professional standing in the community and his personal standing as a citizen in the community. He further alleges that the articles were false and defamatory and ". . . were made maliciously, with knowledge that said statements were false in a deliberate attempt to injure the plaintiff and prejudice him in his character, reputation and good standing as a municipal attorney . . . ." Damages of $1,000,000 are alleged in each of these two counts.

## OPINION

Plaintiff contends that the amended complaint alleged a sufficient cause of action in libel conforming to the precepts of New York Times Co. v. Sullivan, 376 US 254, 11 L Ed2d 686 (1964) and Coursey v. Greater Niles Tp. Pub. Corp., 40 Ill2d 257, 239 NE2d 837 (1968), affg 82 Ill App2d 76, 277 NE2d 164 (1967). Defendant, however, contends that the complaint was insufficient in that it failed to properly allege malice.

In New York Times, supra, it was held that a public official in a libel action for a defamatory falsehood relating to his official conduct could not recover damages unless he proved that the statement was made "with malice," that is, with knowledge that it was false or with a reckless disregard of whether it was false or not. A subsequent Illinois case has held that a municipal attorney is within the category of a "public official," and therefore required to overcome the New York Times Co. v. Sullivan, supra, constitutional protection afforded de-

fendant. Tunnell v. Edwardsville Intelligencer, Inc., 99 Ill App2d 1, 241 NE2d 28, revd on other grounds, 43 Ill2d 239, 252 NE2d 538 (1969). In light of that case plaintiff abandoned the odd-numbered counts in this court and now relies solely on the adequacy of his pleadings in the even-numbered counts alleging libel in his capacity as municipal attorney.

In Coursey v. Greater Niles Tp. Pub. Corp., supra, the court discussed the proper allegations in a cause of action of this nature and said at page 266:

> "The amended complaint did considerably more than repeat the epithet of 'actual malice.' As previously noted, it charged that the defendants, and each of them, intending to injure the plaintiff's good name and to injure him in his livelihood, *with knowledge that it was false and with reckless disregard to whether it was false or not,* maliciously composed, published and caused to be published in their said newspaper, an article containing false, scandalous and malicious libels concerning the Plaintiff! . . . Therefore, we hold the amended complaint was legally sufficient and created triable issues of fact." (Emphasis supplied.)

In weighing the sufficiency of the allegations of malice in libel cases where plaintiff is a "public officer" the necessity for pleading knowledge of falsity or reckless disregard of falsity is also pointed out in Suchomel v. Suburban Life Newspapers, Inc., 40 Ill2d 32, 240 NE 2d 1 (1968), and Doctors Convalescent Center, Inc. v. East Shore Newspapers, Inc., 104 Ill App2d 271, 244 NE 2d 373 (1968).

Of the nine even-numbered counts upon which plaintiff relies in the instant case only six sufficiently allege the requisite malice. In Counts II, VI and X plaintiff fails to allege that the defendants either knew of the falsity of the contents or exhibited a reckless disre-

gard as to its falsity. The publications themselves do not raise any inference as to defendants' knowledge or conduct in determining the truth or falsity of the contents. Since malice has been defined in terms of "knowledge" or "reckless disregard" of the falsity of the contents of the alleged libel (New York Times Co. v. Sullivan, supra), we believe this omission to be fatal.

Counts IV, VIII, XII, XIV, XVI and XVIII allege knowledge of falsity on the part of the defendants and, therefore, sufficiently meet pleading standards in a libel action by a public official. We hold that the trial court erred in dismissing these six even-numbered counts and its order in that respect is reversed. We affirm that part of the ruling which dismissed Counts II, VI and X and the odd-numbered counts which were abandoned by plaintiff before this court. The cause is remanded for proceedings not inconsistent with the views herein expressed.

Affirmed in part, reversed in part and remanded.

DRUCKER and ENGLISH, JJ., concur.