Opinion
PHILLIPS, J.
I. Introduction
This appeal is from a judgment in favor of an assistant public defender against a citizens’ group and the editor of its newsletter for defamatory statements printed in the newsletter.
The principal issue before us on appeal is whether an assistant public defender is a public official within the meaning of New York Times Co. v. Sullivan (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412][1] and is, therefore, required to prove actual malice to recover damages for defamatory falsehoods by the press. The trial judge, upon appellants’ motion for partial summary judgment, ruled that an assistant public defender is not a public official. We hold that he is, and, accordingly, reverse and remand for a new trial on the issue of actual malice.[2]
II. Facts
Respondent Peter Tague brought this libel action against Citizens for Law and Order (CLO) and Earl Huntting, appellants, and Mrs. George *Supp. 20 Hemler and Does I through XX.[3] On September 6, 1974, the Oakland Tribune published a short article on the sentencing hearing of a person represented by respondent in his capacity as assistant public defender. The article stated that the trial court had discounted respondent’s representation that his client had previously done well on parole. Solely on the basis of this article, appellant Huntting wrote a letter to respondent’s superior, Public Defender James Hooley, and published an article in the CLO News stating that respondent had “misrepresented facts to the trial court.” Upon respondent’s demand for retraction, appellants published an article in the CLO News stating that respondent had not misrepresented facts in open court; the article falsely implied, however, that respondent had lied to the judge in chambers.
Appellants moved for summary judgment on the ground that respondent was a public official within the meaning of New York Times and that respondent was unable to show that the statement was made with actual malice, as required to overcome the resulting constitutional privilege. The court apparently found that respondent was not a public official and denied the motion. The jury returned a verdict for respondent, against CLO and Huntting, making a special finding of malice by a preponderance of the evidence. Appellants moved for a new trial and judgment notwithstanding the verdict, in part on the ground that the trial court improperly determined that respondent was not a public official. The motions were denied. This appeal followed.
III. Discussion
A. Interests Involved
We note at the outset the fundamental interests involved in this case: the right of the press to criticize freely, without malice, those responsible for government affairs; the right of an assistant public defender to privacy and reputation and his interest in representing unpopular clients free from coercion and veiled threats by the press; the interest of the public in crime prevention and careful scrutiny of the operations of the criminal justice system; and the right of in digents to effective legal defense in criminal actions.
*Supp. 21 The gravity of these interests and the absence of case authority on the precise question of the public status of an assistant public defender compels us to reach a decision that both falls within prevailing legal boundaries and best accommodates the values embodied in these interests.
B. Assistant Public Defender as Public Official
The First Amendment guarantee of freedom of the press limits a state’s power to award damages in defamation actions by public persons. In New York Times Co. v. Sullivan, supra, 376 U.S. 254, the United States Supreme Court held that the constitutional privilege of the press to publish defamatory falsehoods without actual malice applies to statements about the official conduct of public officials.[4] (Id. at p. 279 [11 L.Ed.2d at p. 706]; accord, Noonan v. Rousselot (1966) 239 Cal.App.2d 447 [48 Cal.Rptr. 817].)
Is Assistant Public Defender Tague a public official within the meaning of New York Times and therefore required to overcome this privilege by proving that CLO published the libelous statements with actual malice?
In Rosenblatt v. Baer (1966) 383 U.S. 75 [15 L.Ed.2d 597, 86 S.Ct. 669], the Supreme Court articulated the threshold test for determining whether a government employee is a public official: “[T]he ‘public official’ designation applies at the very least to those among the heirarchy of government employees who have or appear to the public to have substantial responsibility for or control over the conduct of government affairs.” (Italics added; id. at p. 85 [15 L.Ed.2d at p. [5] To determine whether a government employee, such as an assistant public defender, has or appears to have substantial responsibility for the conduct of governmental affairs, and is therefore to be deemed a public official, a court may properly look to the nature of his “functions, duties, and *Supp. 22 relationship with the public.” (See Peoples v. Tautfest (1969) 274 Cal.App.2d 630 [79 Cal.Rptr. [6] Gilligan v. King (1965) 48 Misc.2d 212 [264 N.Y.S.2d 309], affd. 29 App.Div.2d 935 [290 N.Y.S.2d 1014]; Tunnell v. Edwardsville Intelligencer, Inc. (1968 99 Ill.App.2d 1 [241 N.E.2d 28].)[7] Where that employee’s duties or position in government has “such apparent importance the public has an independent interest in the qualifications and performance of the person who holds that position,” the public’s interest in debate about public issues and those responsible for the resolution of those issues is best served by holding that employee to be a public official within the meaning of New York Times. (See Rosenblatt v. Baer, supra, 383 U.S. at pp. 83-86 [15 L.Ed.2d at pp. 604-606].)
In Tunnel v. Edwardsville Intelligencer, Inc. supra, the Illinois Court of Appeals held that the plaintiff city attorney was a public official for the purpose of the underlying libel action. Although based on facts not precisely analogous to those of our case, Tunnel is instructive as to the manner in which courts apply the Rosenblatt criteria.[8] In finding that the city attorney has or appears to the public to have substantial control over the conduct of government affairs, the court focused on the broad dutiés of the city attorney as defined in Illinois court decisions and in attorney general opinions (legal adviser to city officers' and the city council regarding their duties and powers; representative of the city on all legal matters; law officer of the city). The court also noted the public’s interest in the subject about which the attorney was criticized (promotion of illegal acts) and the availability of opportunity for rebuttal (the public meetings of the city council were available to the attorney as a forum from which to expose the falsity of the defamatory statements).

*Supp. 23
Duties of Assistant Public Defender

In our case, as in Tunnel, the respondent was entrusted with specific duties and performed specific functions of considerable public importance. As an attorney in the office of the public defender; Tague was charged by state law with “representing those persons assigned to him as clients by the Public Defender of Alameda County,” thereby serving to discharge the government’s constitutionally prescribed duty to provide legal representation to indigent criminal defendants. (See Gideon v. Wainwright 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].)
As an attorney who attained the rank of public defender II, Tague was responsible for felony cases, including discretionary control over pretrial matters (investigation, trial preparation, plea bargaining), trials and sentencing. It is apparent to us that Tague’s performance of these governmental duties, for the direct benefit of those for whom the government is legally responsible, is precisely the “conduct of government affairs” deserving of public scrutiny that the court envisioned in Rosenblatt.

Subject of Public Concern

Moreover, the subject of crimes and criminals, the core of the public defender’s practice, plunges deeply into the heart of public concern. The sword is double-edged. On the one hand, there is a strong societal interest in protecting the democratic rights of all people, including those who are indigent and in need of criminal defense. On the other hand, the increasing incidence of crime arouses public concern for safety and *Supp. 24 well-being. The public’s dual interest in preventing crime and preserving democratic rights has given rise in recent years to careful scrutiny of the criminal justice system in America. Judges, district attorneys, and public defenders, as integral components of that system, are appropriáte targets for scrutiny as to their qualifications and performances.
CLO, it appears, was organized to effect such scrutiny. Its newsletter, CLO News, is the means by which it apprises members of matters relating to law .enforcement in Alameda County. Its criticism of respondent Tagu.e, however false, was addressed to his performance as a government employee involved in a matter of considerable public concern. Public defenders are paid by the taxpayers and entrusted with the duty of implementing public policy concerning crime, and criminal justice. If they are allowed to perpetrate fraud on the "court, in breach of that duty, dangerous individuals may be released at considerable risk to public safety. Both public and press, therefore, have an interest in robust criticism of even the appearance of unethical conduct on the part of public defenders. As assistant public defender, Tague’s duties evoked public scrutiny; his reported actions warranted privileged comment about his qualifications and performance.
Finally, as a matter of constitutional policy in libel actions, we believe that any doubt as to the public status of a government employee should be resolved in favor of the First and Fourteenth Amendments’ guarantees of freedom of the press and the public’s interest in open criticism of government operations. (See Rosenblatt v. Baer, supra, 383 U.S. 75.)
Accordingly, we find that Assistant Public Defender Tague has substantial responsibility for the conduct of government affairs and that his governmental duties involve a subject of such public importance as to justify public scrutiny and uninhibited comment about his performance of those duties. We therefore hold, in accordance with Rosenblatt, that an assistant public defender is a public official within the meaning of New York Times and its progeny, and must prove actual malice to recover damages in this libel action.[9]
*Supp. 25 To hold otherwise would hamper the press in its quest to speak freely and the public in its effort to scrutinize the workings of the criminal justice system. The threat of libel action by an assistant public defender or someone in a similar position of public trust would chill the unprotected press in its effort to scrutinize government conduct in criminal justice. The effect of our holding is to mitigate the impact of that potential threat by reducing, though not eliminating, the probability of recovery by such persons. In addition, by affording the press room to err in good faith in its criticism, the public is benefitted by the increased flow of information on crime and law enforcement and the greater assurance of ethical conduct by government employees. At the same time, the individual is afforded a reasonable measure of protection of reputation. He or she may demand retraction or, if no retraction is printed, recover punitive, special, and general damages where he or she proves that the defamatory statement was printed with knowledge that it was false or with reckless disregard as to its accuracy. The press, therefore, is prevented from using this decision as a legal veil for grossly irresponsible or vindictive behavior.
C. Error in Jury Instructions
The jury’s special finding of malice on the part of both CLO and Huntting is invalid. The trial court erred in instructing the jury regarding the finding of malice rather than actual malice, and that such malice may be found by a preponderance of the evidence. Where First Amendment rights are involved, as here, the quantum of proof is greater; the plaintiff must prove actual malice by clear and convincing evidence. (Field Research Corp. v. Patrick (1973) 30 Cal.App.3d 603, 608 [106 Cal.Rptr. 473]; Belli v. Curtis Pub. Co. (1972) 25 Cal.App.3d 384, 388 [102 Cal.Rptr. 122]; Gertz v. Robert Welch, Inc. supra 418 U.S. 323, 342 [41 L.Ed.2d 789, 806-807]; Roemer v. Retail Credit Co. (1975) 44 Cal.App.3d 926, 932 [119 Cal.Rptr. 82].)
As guidance for the trial court, we recommend that the instructions on the issue of actual malice should cover the following points:
1) That, as a matter of law, plaintiff is to be regarded as a public official;
2) That defamation of a public official is privileged under the Constitution’s guarantee of freedom of the press, and that to overcome this privilege and recover damages for defamation, the plaintiff must prove that the article was published with actual malice;
*Supp. 26 3) That “actual malice” means knowledge that the article was false or reckless disregard as to its accuracy; and
4) That such actual malice must be proved by clear and convincing evidence, which is evidence that is “clear, explicit, and unequivocal,” “so clear as to leave no substantial doubt,” and “sufficiently strong to demand the unhesitating assent of every reasonable mind.” (See Evid. Code, § 115; also Cal. Judges Bench book (CJER) Evidence Objections, § 8.3.)
The judgment of the municipal court is reversed and the case is remanded for a new trial on the issues of actual malice and general damages, and for such further proceedings as are not inconsistent with this opinion.
Sutton, J., concurred.

In New York Times, supra, the case which we deem to be controlling, the United States Supreme Court held that: “The constitutional guarantees [of free speech] require ... a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with ‘actual malice’....” (376 U.S. at pp. 279-280 [11 L.Ed.2d at p. 706].) (Italics added.)

The jury made a special finding of malice on the part of both appellants. The jury instructions, however, were erroneous in two respects. First, they referred to “malice” rather than “actual malice.” Second, the standard applied was that of preponderance of the evidence. A greater quantum of proof, clear and convincing evidence, is required where First Amendment rights are involved. (See discussion for a more detailed analysis.) As a result, a retrial on the issue of malice is necessary.

Huntting was one of the original founders of CLO, a private, nonprofit corporation actively interested in local civic problems, especially as they relate to crime and the criminal justice system. Huntting was also the president of CLO and the editor of and principal writer for the CLO News, a monthly newsletter distributed to approximately 3,000 members of CLO,- and other persons, including prosecutors, judges, and private attorneys in Alameda County.

The rationale underlying this privilege is that the public’s interest in good faith debate about public officials outweighs the officials’ interest in protecting their reputations, and that a public official assumes the risk of good faith criticism and generally has access to forums for rebuttal if the criticism is false. See also Gertz v. Robert Welch, Inc. (1974) 418 U.S. 323 [41 L.Ed.2d 789, 94 S.Ct. 2997] where the New York Times rule was extended to public figures, that is, persons who have achieved widespread notoriety or have injected themselves or been drawn into the center of public controversy.

The court acknowledged that the supervisor of a county-owned ski recreation area might be a public official and reserved the question for the trial court if retrial were sought. (383 U.S. at pp. 87-88 [15 L.Ed.2d at pp. 606-607].)

In Tautfest, supra, 274 Cal.App.2d 630, the defendant failed to proffer evidence as to the duties, function, Dr relationship of the public concerning plaintiff’s job and was therefore unable to establish that a former city recreation director was a public official within the meaning of New York Times.

Respondent cites several California cases decided prior to New York Times which suggest that the appropriate inquiry is the extent to which the particular position involves the exercise of sovereign power. These cases involve law determinations of the public status of government employees for the purpose of local administration and thus have no relevance here where First Amendment issues are involved. (See Rosenblatt, supra, 383 U.S. at p. 84 [15 L.Ed.2d at p. 604].)

Other cases with facts differing considerably from those of "our case have held attorneys employed by the government to be public officials within the meaning of New York Times. In Garrison v. Louisiana (1965) 379 U.S. 64 [13 L.Ed.2d 125,-85 S.Ct. 209], judges were presumed to be public officials. The question there was whether or not the defamatory statement was addressed to the judge’s official conduct or his private conduct. In Schneph v. New York Post Corp. (1975) 16 N.Y.2d 1011 [265 N.Y.S.2d 897, *Supp. 23 213 N.E.2d 309], the chief of the division of penalties of the Office of Corporation Counsel of New York was found to be a public official. The court of appeals rejected the argument that the plaintiff was merely one of a number of civil service attorneys. The plaintiff was a public administrator and was criticized as such, not as a lawyer representing her client in criminal defense. In Phoenix Newspapers, Inc. v. Church (1968) 103 Ariz. 582 [447 P.2d 840], a state attorney general was held to be a public official. The basis for the decision was not clearly articulated. The defamatory statement was printed in response to a speech on labor politics delivered by the attorney. In Edwards v. Roelofs (1970) 120 Ill.App.2d 30 [256 N.E.2d 89], the plaintiff, a municipal attorney, conceded that he was a public official. But see Zeck v. Spiro (1966) 52 Misc.2d 629 [276 N.Y.S.2d 395] where practicing attorneys employed by a county sewer district were deemed not to be public officials within the New York Times rule. The court’s reasoning was muddled and the holding appeared to turn on a finding that the defamatory statement did not involve “official conduct” rather than that attorneys were not in positions of control over the conduct of public affairs.

We do not hold that an attorney is a public official solely by reason of his membership in a state bar and his status as officer of the court. (See Gertz v. Robert Welch, Inc. (1974) 418 U.S. 323 [41 L.Ed.2d 789, 94 S.Ct. 2997]; Harkaway v. Boston Herald Traveler Corporation (1st Cir. 1969) 418 F.2d 56; Hotchner v. Castillo-Puche (S.D.N.Y. 1975) 404 F.Supp. 1041.)