[No. C041087. Third Dist. July 25, 2003.]

ALAN V. WEINBERG, Plaintiff and Respondent, v.
DUANE H. FEISEL, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Horvitz & Levy, David S. Ettinger, Karen M. Bray; Sinclair & Hill and Craig A. Sinclair for Defendant and Appellant.

Dennison, Bennett & Press and James H. Goudge for Plaintiff and Respondent.

OPINION

**SCOTLAND, P. J.**—Plaintiff Alan V. Weinberg brought this action against defendant Duane H. Feisel for libel, slander, and intentional infliction of emotional distress after defendant told others that plaintiff had stolen a valuable collector's item from him. Defendant appeals from the trial court's order denying his special motion, made pursuant to the so-called anti-SLAPP statute (Code Civil Proc., § 425.16), to strike the causes of action against him. (Further section references are to the Code of Civil Procedure unless otherwise specified.)[1]

The Legislature enacted the anti-SLAPP statute when it perceived "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) ██ Under the statute, a cause of action "that arises from protected speech or petitioning *and* lacks even minimal merit" should be stricken. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].) Defendant contends this is such a case.

Two of the categories of conduct to which the anti-SLAPP statute applies are "any written or oral statement or writing made in a place open to the public or a public forum *in connection with an issue of public interest*" and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech *in connection with a public issue or an issue of public interest.*" (§ 425.16, subd. (e), italics added.)

Among other things, defendant claims that the causes of action against him "arise from [his] discussion of criminal activity, which is 'an issue of public interest' under the [anti-SLAPP] statute." In defendant's view, warning others of a suspected theft, so they can secure their property from the alleged wrongdoer, serves the public interest in deterring crime and protecting the interests of others who could suffer such harm. Moreover, he argues, the warning "could encourage others to come forward with information so that [plaintiff] could be reported to and prosecuted by the authorities." Thus, defendant concludes, "[p]roperly construed, the anti-SLAPP statute encompasses as a public issue [his] communications concerning [defendant's] suspected criminal activity."

We disagree and shall affirm the order denying the special motion to strike. As we will explain, defendant did not report his suspicions to law enforcement, and there is no evidence that he intended to pursue civil charges against

---

[1] SLAPP stands for strategic lawsuit against public participation. (See *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 [124 Cal.Rptr.2d 507, 52 P.3d 685].) ██ An order granting or denying a special motion to strike is an appealable order pursuant to section 425.16, subdivision (j).

plaintiff. Rather, it is alleged that defendant began a private campaign, so to speak, to discredit plaintiff in the eyes of a relatively small group of fellow collectors. Since the record does not support a conclusion that plaintiff is a public figure or that he has thrust himself into any public issue, defendant's accusations related to what in effect was a private matter. Under the circumstances, the fact that defendant accused plaintiff of criminal conduct did not make the accusations a matter of public interest.

Simply stated, causes of action arising out of false allegations of criminal conduct, made under circumstances like those alleged in this case, are not subject to the anti-SLAPP statute. Otherwise, wrongful accusations of criminal conduct, which are among the most clear and egregious types of defamatory statements, automatically would be accorded the most stringent protections provided by law, without regard to the circumstances in which they were made—a result that would be inconsistent with the purpose of the anti-SLAPP statute and would unduly undermine the protection accorded by paragraph 1 of Civil Code section 46, which includes as slander any false and unprivileged communication charging a person with a crime, and the California rule that false accusations of crime are libel per se (Civ. Code, § 45a; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 482, p. 566).

Because defendant failed to demonstrate that the challenged causes of action arose from protected activity, the trial court properly denied defendant's special motion to strike.

## FACTUAL BACKGROUND

The following allegations are taken from declarations and exhibits submitted to the trial court with respect to the motion to strike.

Plaintiff and defendant are aficionados of token collecting. Token collectors have an association known as the National Token Collectors' Association, which publishes a monthly newsletter called Talkin' Tokens. The association has approximately 700 members. There also are local associations, including the Western States Token Society, which has about 50 members. Plaintiff has been a member of the national association since its inception in 1997, and was a member of predecessor associations for 20 to 25 years before that. At relevant times, defendant was a member and secretary of the national association and was president of the western states association.

From time to time, local associations put on token shows. The dispute that gave rise to this litigation arose at a token show in Oakland in 1998 or 1999, where defendant showed his "good-for" encased coin collection to plaintiff. (A "good-for" encased coin appears to be a token that encases an actual coin.

The tokens were issued by merchants, who would exchange the identified "good-for" items for the token.) Defendant later discovered that his good-for encased cent from Bob Harper's Bank Exchange Saloon, of San Angelo, Texas, was missing, and he concluded that plaintiff had stolen it. Defendant confronted plaintiff with the disappearance of the token, but plaintiff denied he has ever stolen anything from defendant. Communications between the parties failed to resolve the issue.

Defendant began what can be characterized as a campaign to oust plaintiff from the token collecting avocation. He published an advertisement in the July 2000 issue of Talkin' Tokens, in which he described the disappearance of his token and said that it was discovered to be missing shortly after it was shown to another collector. In the advertisement, defendant did not identify plaintiff as the culprit; however, he later did so in written and oral communications with other token collectors.

After the advertisement had run, defendant sent a letter to over 20 collectors. Among other things, he identified plaintiff as the collector who took defendant's token. He also said that others have had similar happenings or have other concerns or questionable experiences involving plaintiff. Defendant alleged that plaintiff engages in misrepresentations, misstatements of fact, and outright lies, and he describes plaintiff as "a master of misinformation." He asked, "[w]ho among you will help to 'bell the cat?' "[2]

In November 2000, the western states association was preparing to put on its Western States Token Society Token Jamboree. Defendant, as president and jamboree chairman, obtained a vote of the membership purporting to exclude plaintiff from attending the jamboree or any of its related events. From the record, it appears defendant obtained that vote without giving plaintiff notice or any opportunity to present his side of the dispute. Defendant notified plaintiff by mail that he would be subject to arrest and prosecution if he attempted to attend.

In the December 2000 issue of Talkin' Tokens, defendant published another statement. He expressed dismay that a token collector colleague would steal from him, described the matter as an ongoing saga of unpleasantness, and said he expected to have more to report as further information was obtained from other apparent victims of this same individual.

---

[2] Plaintiff states that, according to the dictionary, to "bell the cat" means "to attempt something formidable or dangerous." That aptly describes the task of the individual mouse that set out to bell the cat; however, from the standpoint of other mice, it means employing a device that would preclude the cat from interacting with mice the way cats and mice normally interact. From the context of defendant's actions in their entirety, it appears he intended the latter meaning, that is, his purpose was to preclude plaintiff from interacting with other token collectors and dealers.

In January 2001, defendant sent another letter to other token collectors, asserting that plaintiff is a thief and chronic liar. Defendant stated: "I believe that he is 'feeling the heat' right now. My tactics have been to try to 'get into his head' and let him know that more information would be forthcoming, without saying what that information might be, just to keep him on edge and guessing what might be next." He reported his success in having plaintiff excluded from the western states token jamboree, suggested that efforts be made to exclude plaintiff from other token shows, and said he had already contacted one association, identified as NW TAMS, in that regard. Defendant's proposed ideas for further action included an advertisement to be printed in association journals that could be used as handouts at token shows, buttons showing plaintiff's initials with a slash through them to be worn at token shows, coordinated submission of individual letters to plaintiff in which "[t]he writer could say almost whatever he wanted (no threats, however) without fear of any legal implications," and simultaneous submission of ethics complaints to the national association where ethics violations have occurred.[3]

Plaintiff is a retired Los Angeles police officer. Sergeant Don Keith, as retirement coordinator, serves as the department's liaison with retired officers. Sergeant Keith's duties include issuance of identification cards and concealed weapon permits, the determination whether concealed weapon permits should be renewed, and investigation of alleged abuse of identification cards. In February 2001, Keith advised plaintiff that defendant had contacted him. Defendant purportedly said that plaintiff has a violent temper, that people were in fear for their lives if plaintiff attended an upcoming token show in Dublin, and that plaintiff had been stealing at several shows. Defendant admits that he contacted Keith and that his purpose was not to report a theft. While he denies making the specific statements attributed to him, he says that he contacted Keith out of concern for the safety of members of the local and national associations and that the security of members, tokens, coins, etc., arose during the conversation.

Plaintiff filed a complaint for libel, slander, and the intentional infliction of emotional distress. Eventually, defendant filed a special motion to strike pursuant to section 425.16. The trial court found defendant failed to demonstrate that this action is subject to section 425.16 and denied the motion.

---

[3] The record reflects that plaintiff in fact wanted the national association to become involved in resolving the dispute, but that was an approach defendant rejected.

## DISCUSSION

### I

■ Section 425.16 requires that a court engage in a simple, two-step process in ruling on a special motion to strike. First, the court must decide whether the defendant has made a sufficient threshold showing that the challenged cause of action is subject to a special motion to strike. Second, if the threshold showing has been made, the court must determine whether the plaintiff has demonstrated sufficient minimal merit to be allowed to proceed. (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89; *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.) Nothing outside of this two-step process is relevant. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695]; *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 66.)

■ Section 425.16, subdivision (e), sets forth four categories of conduct to which the anti-SLAPP statute applies. The only way a defendant can make a sufficient threshold showing is to demonstrate that the conduct by which the plaintiff claims to have been injured falls within one of those four categories. (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 66.)

■ The first two categories of conduct identified in section 425.16, subdivision (e), are statements made in, or in connection with an issue under consideration in, an official proceeding. When defendant concluded that plaintiff had stolen a token from him, he did not pursue any of the civil or criminal remedies available to him. Nothing in the record even arguably suggests that defendant's chosen course of conduct is within either of the first two categories set forth in section 425.16, subdivision (e).

The third category embraces statements made "in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) A public forum is a place open to the use of the general public " 'for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " (*International Soc'y for Krishna Consciousness v. Lee* (1992) 505 U.S. 672, 679 [120 L.Ed.2d 541, 550, 112 S.Ct. 2701], quoting *Hague v. Committee for Industrial Organization* (1939) 307 U.S. 496, 515 [83 L.Ed. 1423, 1436, 59 S.Ct. 954].) Means of communication where access is selective, such as most newspapers, newsletters, and other media outlets, are not public forums. (*Arkansas Educ. TV v. Forbes* (1998) 523 U.S. 666, 678–680 [140 L.Ed.2d 875, 887–889, 118 S.Ct. 1633].) Some of the statements of which plaintiff complains were printed in Talkin'

Tokens. There is nothing in the record to establish Talkin' Tokens is sufficiently open to general public access to be considered a public forum.[4]

The fourth category of conduct within section 425.16 is "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) The right of petition refers to the right to petition the government for the redress of grievances and is not arguably implicated here. Accordingly, we focus on the right of free speech.

■ It is well established that defamation of an individual is not protected by the constitutional right of free speech. (*Beauharnais v. Illinois* (1952) 343 U.S. 250, 254–256 [96 L.Ed. 919, 926-927, 72 S.Ct. 725].) However, "[a]lthough the erroneous statement of fact is not worthy of constitutional protection, it is nevertheless inevitable in free debate." (*Gertz v. Welch* (1974) 418 U.S. 323, 340 [41 L.Ed.2d 789, 805, 94 S.Ct. 2997].) The threat of litigation and the potential for liability can "induc[e] a cautious and restrictive exercise" of the right to free speech. (*Ibid.*) Accordingly, the Supreme Court has chosen to "protect some falsehood in order to protect speech that matters." (*Id.* at p. 341 [41 L.Ed.2d at p. 806].) ■ To do so, the court has established certain requisites for the successful prosecution of a defamation action by public officials and public figures. In this sense, a public figure is a person who has assumed a role of special prominence in the affairs of society, who occupies a position of persuasive power and influence, or who has thrust himself to the forefront of a particular public controversy in order to influence the resolution of the issues involved. (*Id.* at p. 345 [41 L.Ed.2d at p. 808].) For this purpose, a "public controversy" does not equate with any controversy of interest to the public. (*Time, Inc. v. Firestone* (1976) 424 U.S. 448, 454 [47 L.Ed.2d 154, 163, 96 S.Ct. 958].) For example, a divorce action between the scion of one of America's wealthier industrial families and his

---

[4] *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468 [102 Cal.Rptr.2d 205] held that a small, private, selective-access newsletter is a public forum within the meaning of subdivision (e)(3) of section 425.16. (*Damon v. Ocean Hills Journalism Club*, supra, at pp. 472, 476, 478.) ■ That conclusion overlooks a fundamental rule of statutory construction, i.e., when, in a statute, the Legislature employs a word or phrase that has a well-defined and judicially established meaning, then absent a clear indication of legislative intent to the contrary, that is the meaning which must be given to the word or phrase. (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078]; *People v. McGuire* (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12].) The concept of a public forum was developed in, and has sole reference to, First Amendment cases. Those cases establish beyond doubt that a private selective-access newsletter is the very antithesis of a public forum. While it might be shown in a particular case that a newsletter is sufficiently open to general public access as to come within section 425.16, a private selective-access newsletter cannot be found to be a public forum without such a showing. To the extent the decision in *Damon v. Ocean Hills Journalism Club* suggests otherwise, it is contrary to the plain language of the statute, and we decline to follow it.

Palm Beach society wife may have piqued the public's interest but was not a public controversy. (*Id.* at pp. 454–455 [47 L.Ed.2d at p. 163].)

■ While private communications about private matters are not totally unprotected by the First Amendment, they warrant no special protection against liability for defamation when they are false and damaging to the subject's reputation. (*Dun & Bradstreet v. Greenmoss Builders* (1985) 472 U.S. 749, 759–760, 762 [86 L.Ed.2d 593, 603, 604, 105 S.Ct. 2939].) In support of his special motion to strike, defendant did not present any evidence to show that plaintiff was anything other than a private, anonymous token collector; that their dispute was anything other than a private controversy; or that the communications were made to anyone other than a small group of other private parties.

In addition, both the third and fourth categories of conduct that fall within section 425.16 are subject to the limitation that the conduct must be in connection with an issue of public interest. The Legislature intended this requirement to have a limiting effect on the types of conduct that come within the third and fourth categories of the statute. (*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 926 [130 Cal.Rptr.2d 81]; see also *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117–1118 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

The statute does not provide a definition for "an issue of public interest," and it is doubtful an all-encompassing definition could be provided. However, the statute requires that there be some attributes of the issue which make it one of public, rather than merely private, interest. A few guiding principles may be derived from decisional authorities. First, "public interest" does not equate with mere curiosity. (*Time, Inc. v. Firestone, supra,* 424 U.S. at pp. 454–455 [47 L.Ed.2d at p. 163]; *Briscoe v. Reader's Digest Association, Inc.* (1971) 4 Cal.3d 529, 537 [93 Cal.Rptr. 866, 483 P.2d 34].) Second, a matter of public interest should be something of concern to a substantial number of people. (*Dun & Bradstreet v. Greenmoss Builders, supra,* 472 U.S. at p. 762 [86 L.Ed.2d at p. 604].) Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. (*Ibid.*; *Hutchinson v. Proxmire* (1979) 443 U.S. 111, 135 [61 L.Ed.2d 411, 431, 99 S.Ct. 2675].) Third, there should be some degree of closeness between the challenged statements and the asserted public interest (*Connick v. Myers* (1983) 461 U.S. 138, 148–149 [75 L.Ed.2d 708, 720–721, 103 S.Ct. 1684]); the assertion of a broad and amorphous public interest is not sufficient (*Hutchinson v. Proxmire, supra,* 443 U.S. at p. 135 [61 L.Ed.2d at p. 431]). Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort "to gather ammunition for another round of [private]

controversy ...." (*Connick v. Myers, supra*, 461 U.S. at p. 148 [75 L.Ed.2d at p. 721].) Finally, "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." (*Hutchinson v. Proxmire, supra*, 443 U.S. at p. 135 [61 L.Ed.2d at p. 431].) A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people. (*Ibid.*; *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO, supra*, 105 Cal.App.4th at p. 926.)

Examples of matters of public interest may be gleaned from the following decisional authorities. *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, at page 651 [49 Cal.Rptr.2d 620] (disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc., supra*, 29 Cal.4th at p. 68), involved statements concerning a lawsuit against a large and wealthy church that had been the subject of extensive media coverage. *Averill v. Superior Court* (1996) 42 Cal.App.4th 1170, at page 1175 [50 Cal. Rtpr. 2d 62], involved statements about the placement of a shelter for battered women that had been the subject of considerable public controversy, including local land use hearings. *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, at pages 238 and 239 [83 Cal.Rptr.2d 677], involved allegations of domestic violence against a nationally known political consultant who successfully had used the domestic violence issue in a number of political campaigns. *Damon v. Ocean Hills Journalism Club, supra*, 85 Cal.App.4th at page 479, involved political statements regarding self-government of 3,000 persons who lived in a gated community. *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, at pages 807 and 808 [119 Cal.Rptr.2d 108], involved statements about a participant in the television broadcast Who Wants to Marry a Multimillionaire, which had generated considerable public debate.

In contrast, no issue of public interest was involved in *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO, supra*, 105 Cal.App.4th 913 (hereafter *Rivero*). There, the plaintiff, David Rivero, was the former supervisor of janitors at the International House on the campus of the University of California at Berkeley. (*Id.* at p. 916.) Some of the janitors made allegations of misconduct that were investigated and were not substantiated. Nonetheless, Rivero was demoted and then fired when he would not accept demotion. (*Ibid.*) Thereafter, the employees union published and distributed three documents containing claims of misconduct by Rivero. (*Id.* at pp. 916–917.) The Court of Appeal concluded that the publications did not involve a matter of public interest. "Here, the Union's statements concerned the supervision of a staff of eight custodians by Rivero, an individual who had previously received no public attention or media coverage. Moreover, the only individuals directly involved in and affected by the situation were Rivero and the eight custodians. Rivero's supervision of those eight individuals is

hardly a matter of public interest." (*Id.* at p. 924.) The court also rejected the claim that the defendant could turn a private matter into one of public interest simply by publishing it to numerous people. "If the mere publication of information in a union newsletter distributed to its numerous members were sufficient to make that information a matter of public interest, the public-issue limitation would be substantially eroded, thus seriously undercutting the obvious goal of the Legislature that the public-issue requirement have a limiting effect." (*Id.* at p. 926.)

We agree with the decision in *Rivero* and find it persuasive here. Defendant has failed to demonstrate that his dispute with plaintiff was anything other than a private dispute between private parties. The fact that defendant allegedly was able to vilify plaintiff in the eyes of at least some people establishes only that he was at least partially successful in his campaign of vilification; it does not establish that he was acting on a matter of public interest.

Defendant contends that his statements accused plaintiff of criminal activity and that criminal activity is always a matter of public interest. The authorities upon which defendant relies are inapposite.

*Tague v. Citizens for Law & Order, Inc.* (1977) 75 Cal.App.3d Supp. 16 [142 Cal.Rptr. 689], held that the operation of the criminal justice system is a matter of public concern and thus "[j]udges, district attorneys, and public defenders, as integral components of that system, are appropriate targets for scrutiny as to their qualifications and performances." (*Id.* at p. 24; but see *James v. San Jose Mercury News, Inc.* (1993) 17 Cal.App.4th 1, 10–11 [20 Cal.Rptr.2d 890] [rejecting the conclusion that a deputy public defender is a public official].) In this case, defendant did not report his suspicions to appropriate prosecutorial authorities, criminal charges are not pending against plaintiff, and plaintiff is not involved in the criminal justice system.

*Baughman v. State of California* (1995) 38 Cal.App.4th 182 [45 Cal.Rptr.2d 82], held that the public interest in exposing and prosecuting serious crime precludes a cause of action for invasion of privacy based upon a search pursuant to a warrant. (*Id.* at p. 190.) In this case, plaintiff has not been subjected to official action, and he is not seeking to recover for an alleged invasion of privacy.

*Sipple v. Foundation for Nat. Progress, supra,* 71 Cal.App.4th 226, involved a top figure in national politics who thrust himself into the domestic violence issue by utilizing the issue in a number of state and national political campaigns. (*Id.* at p. 238.) Here, there is nothing in the record to suggest that plaintiff is a public figure or that he has thrust himself into any public issue.

In *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777 [54 Cal.Rptr.2d 830], the defendant law firm, after investigating a matter on behalf of an aggrieved client, contacted other aggrieved parties to solicit support for filing a complaint with the Attorney General. (*Id.* at pp. 780, 784.) In contrast, here, defendant has not made a complaint to an appropriate prosecutorial official, the statements that are the basis for the action do not indicate an intent to commence a criminal or civil proceeding, and nothing else in the record suggests an intent to engage in an official proceeding.

*Collier v. Superior Court* (1991) 228 Cal.App.3d 1117 [279 Cal.Rptr. 453], noted that Labor Code section 1102.5 prohibits employer retaliation against an employee who reports a reasonably suspected violation of law to a law enforcement agency. (*Collier,* at p. 1123.) The court concluded that public policy should also support a tort action for wrongful discharge when an employer retaliates against an employee for reporting violations of law to the employer. (*Id.* at pp. 1119–1120.) Here, defendant has not complained to any official or unofficial entity with authority to resolve the issue, choosing instead to embark on a private campaign of vilification.

*Briscoe v. Reader's Digest Association, Inc., supra,* 4 Cal.3d 529, concluded that the identification of adults currently charged with the commission of crimes is a matter of public interest. (*Id.* at p. 536.) But the court declined to hold that, in other circumstances, an assertion that a person has engaged in criminal activity automatically falls within the public interest. (*Id.* at p. 537.)

The United States Supreme Court also has rejected the claim that assertions of criminal conduct automatically fall within the public interest. (*Wolston v. Reader's Digest Assn., Inc.* (1979) 443 U.S. 157, 168–169 [61 L.Ed.2d 450, 461, 99 S.Ct. 2701].) As we have noted, there are no charges pending against plaintiff, and defendant has not taken action intended to result in a criminal investigation or prosecution. The fact that defendant's statements accuse plaintiff of criminal conduct make them defamatory on their face. (Civ. Code, §§ 45, 45a, 46.) It does not automatically make them a matter of public interest.

██ Defendant did not report his suspicions to law enforcement, and there is no evidence that he intended to pursue civil charges against plaintiff. Rather, it is alleged that defendant began a private campaign, so to speak, to discredit plaintiff in the eyes of a relatively small group of fellow collectors. Since the record does not support a conclusion that plaintiff is a public figure or that he has thrust himself into any public issue, defendant's accusations against plaintiff related to what in effect was a private matter. Under the circumstances, the fact that defendant accused plaintiff of criminal conduct did not make the accusations a matter of public interest.

 Simply stated, causes of action arising out of false allegations of criminal conduct, made under circumstances like those alleged in this case, are not subject to the anti-SLAPP statute. Otherwise, wrongful accusations of criminal conduct, which are among the most clear and egregious types of defamatory statements, automatically would be accorded the most stringent protections provided by law, without regard to the circumstances in which they were made—a result that would be inconsistent with the purpose of the anti-SLAPP statute and would unduly undermine the protection accorded by paragraph 1 of Civil Code section 46, which includes as slander any false and unprivileged communication charging a person with a crime, and the California rule that false accusations of crime are libel per se (Civ. Code, § 45a; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 482, p. 566).

For all of the reasons stated above, we agree with the trial court that defendant has failed to make the threshold showing required to support a special motion to strike.

II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The order denying defendant's special motion to strike is affirmed.

Morrison, J., and Hull, J., concurred.

---

*See footnote, *ante,* page 1122.