Filed 11/6/14  Sanderson v. Nerium International CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN SANDERSON et al., | |
| Plaintiffs and Respondents, | G048975 |
| v. | (Super. Ct. No. 30-2012-00621436) |
| NERIUM INTERNATIONAL, LLC, et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Franz E. Miller, Judge.  Affirmed.  Motion to dismiss appeal.  Denied.  Motion for judicial notice.  Granted in part and denied in part.

Margolis & Tisman, Blank Rome, Mike Margolis and Timothy J. Martin for Defendants and Appellants.

Dorsey & Whitney, Kent J. Schmidt, Karen A. Morao and Lynnda A. McGlinn for Plaintiffs and Respondents.

\*        \*        \*

John Sanderson and George Taylor sued Nerium International, LLC (Nerium), and its chief executive officer, Jeff Olson, for defamation and other related claims. Nerium and Olson filed a special motion to strike pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP statute).[1] (All further statutory references are to the Code of Civil Procedure, unless otherwise noted.) The trial court denied the special motion to strike; we affirm.

Nerium and Olson failed to make the required showing on the first prong of the test for a special motion to strike: whether Sanderson and Taylor's claims against them arise from protected activity. The trial court correctly concluded that while domestic violence is an issue of public concern, a statement that someone had perpetrated domestic violence was not necessarily a matter of public interest, and therefore not covered by the anti-SLAPP statute.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[2]

Nerium sells a skin care product known as NeriumAD face cream. Olson is Nerium's chief executive officer.

Sanderson is the chief executive officer of a different company that also sells skin care products. Sanderson and Taylor maintain an Internet blog called

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

[2] We grant in part and deny in part Nerium and Olson's motion for judicial notice. We grant the motion as to exhibit Nos. 1 through 6, which are records of a court of this state, and are matters of which judicial notice may properly be taken by this court. (Evid. Code, §§ 452, subd. (d), 459.) We deny the motion as to exhibit No. 7, which is a single page of the top results of a Google search for the term "domestic violence." While an ordinary person's understanding of what the term "domestic violence" means is an issue in this proceeding, exhibit No. 7 is not relevant to that issue. That the term "domestic violence" might be searched on the Internet is irrelevant to any issue before us. (Evid. Code, §§ 452, subd. (h), 459.)

"BareFacedTruth," which provides information regarding skin conditions, skin care ingredients, and product reviews. Sanderson and Taylor wrote articles on their blog criticizing NeriumAD and questioning its safety.

Olson responded by publicly stating he was hiring a private investigator to dig up dirt on the bloggers behind BareFacedTruth. Olson created a promotional video defending and promoting NeriumAD, in which he claimed its critics were really competitors trying to sell an inferior product, and who had had multiple domestic violence issues.

Douglas Burdick, a consultant for Nerium, separately posted similar statements on his Facebook wall, and promised additional information on "[h]ow many times has [the blogger attacking NeriumAD] been charged with domestic violence" and "[w]hy he personally uses multiple social security numbers."

Nerium and Olson acknowledge the statements regarding domestic violence and multiple Social Security numbers were based on a report by a private investigator. As of the time the opposition to the special motion to strike was filed, the report had not been provided to Sanderson and Taylor.

Sanderson and Taylor sued Nerium, Olson, and Burdick for libel per se, slander per se, defamation, intentional and negligent infliction of emotional distress, and invasion of privacy.[3] Nerium filed a special motion to strike the first amended complaint, pursuant to section 425.16, in which Olson later joined. Following briefing and a

_____

[3] Burdick filed a motion to quash service of summons for lack of personal jurisdiction. The trial court denied Burdick's motion, and this court summarily denied his writ petition. The California Supreme Court granted review, and transferred the matter back to this court "with directions to vacate its order denying mandate and to issue an order to show cause why the relief sought in the petition should not be granted in light of *Walden v. Fiore* (2014) 571 U.S. ___ [134 S.Ct. 1115, 188 L.Ed.2d 12]." (*Burdick v. Superior Court* (Mar. 12, 2014, S215455) 2014 Cal. Lexis 1624.)

hearing, the trial court denied the special motion to strike. Nerium and Olson filed a timely notice of appeal.

MOTION TO DISMISS THE APPEAL

Sanderson and Taylor filed a motion to dismiss Nerium and Olson's appeal pursuant to section 425.17, subdivision (e), which provides: "If any trial court denies a special motion to strike on the grounds that the action or cause of action is exempt pursuant to this section, the appeal provisions in subdivision (i) of Section 425.16 and paragraph (13) of subdivision (a) of Section 904.1 do not apply to that action or cause of action." Section 425.17, subdivision (c) exempts commercial speech from section 425.16: "Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist: [¶] (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services. [¶] (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation, except where the statement or conduct was made by a telephone corporation in the course of a proceeding before the California Public Utilities Commission and is the subject of a lawsuit brought by a competitor, notwithstanding that the conduct or statement concerns an important public issue." (§ 425.17, subd. (c).)

4

In opposition to the special motion to strike, Sanderson and Taylor argued, inter alia, the anti-SLAPP statute did not apply because Nerium and Olson's complained-of statements were commercial speech. The trial court's tentative ruling before the hearing stated its intention to deny the special motion to strike, but did not mention section 425.17. Nor was section 425.17 mentioned in the trial court's minute order denying the special motion to strike, which reads, in relevant part, as follows: "[R]e 'public interest' prong, efficacy/dangers of defendants' skin treatments and plaintiffs' critiques of them may be of 'broad and amorphous' public interest, but there must be [a] nexus between the speech and the topic so the speech contributes to the public topic [citations], and slurs re domestic violence and multiple Social Security numbers do not have that nexus; . . . even if Moving Party defendants satisfied 1st prong, plaintiffs have demonstrated sufficient probability of prevailing [citation] since even if defendants referred to Sanderson's sexual encounter with a patient, that is not domestic violence. [¶] Moving party to give notice."

Although the minute order does not specify the trial court denied the special motion to strike based on section 425.17, Sanderson and Taylor argue we should infer such a basis for the court's ruling from the transcript of the hearing on the motion. At the hearing, after the trial court denied the motion to strike, the following colloquy occurred between Sanderson and Taylor's trial counsel and the court:

"Mr. Schmidt: I just had one question, Your Honor.

"The Court: Are you sure?

"Mr. Schmidt: I know, and with trepidation when I prevail on the motion. But the court did not rule on the 425.17 question of the commercial speech exemption, and the reason this is of great significance to us is we filed this case December 31st, so here we are in—nearing September with essentially nothing happening in the case other than this motion and some motions to quash and so forth that are now back on calendar or need to be put back on calendar. But we've essentially been stymied in moving this case

forward.  [¶] 425.17 has the commercial speech exemption.  We were only able to devote two pages to it in our briefing and defendants devoted two paragraphs to it in their reply brief.  We think it is a very compelling argument, and the reason it is significant is because it will, if the court agrees with us, there is not an automatic appeal to the Court of Appeal as opposed to if the court decides this purely on 425.16.  [¶] So we would like— and I'm not sure if the court's intent is to write a statement of decision or it's just going to go with the posted tentative, but we would like to be heard on 425.17, because it really all does boil down to one of the four elements of the Simpson Strong Tie decision and we think we satisfied that element.  And I am glad to address that, or of the court wants to just look at that before it issues its decision and decide whether it's going to decide it only on 425.16 or also on 425.17.

"The Court:  *I will just say this, I have denied the motion on the tentative, for my denial to be based on any and all available grounds*.

"Mr. Schmidt:  Okay.  Are you going to be issuing a statement of decision—

"The Court:  No.

"Mr. Schmidt:  —or just what's posted?

"The Court:  When the minute order comes out it will recite the tentative, but beyond that I intend to do nothing on this case unless I am obligated to do otherwise under law, which I do not believe I am."  (Italics added.)

In the motion to dismiss the appeal, Sanderson and Taylor claim, based on their appellate counsel's declaration, the italicized language was incorrectly transcribed, and the trial court actually said:  "I will just say this, I have denied the motion and intended for my denial to be based on any and all available grounds."  (Underscoring omitted.)  However, Nerium and Olson's appellate counsel submitted a declaration in opposition to the motion to dismiss, in which he averred the reporter's transcript correctly reflects what the trial court said at the hearing.  The conflicting declarations present a

6

problem, as we cannot determine which factual statement regarding the trial court's comments is correct. We could deny the motion for the simple reason Sanderson and Taylor have not established the factual basis for the relief requested.

Even assuming the trial court's comments at the hearing were incorrectly transcribed, we do not agree the trial court necessarily found the commercial speech exemption to section 425.16 applied. As it said it would, the trial court denied the special motion to strike based on the language of the tentative ruling, and nothing more. The court quite correctly could have determined the commercial speech exemption was not an available ground for denying the motion. Indeed, Sanderson and Taylor had filed a motion in the trial court to conduct limited discovery to respond to the special motion to strike. The trial court denied the discovery motion, ruling, in part, as follows: "The commercial speech exemption does not apply; the statements at issue do not consist of representations of fact about defendants' or plaintiffs' business operations, goods, or services." Given the specific ruling on the discovery motion that the commercial speech exemption did not apply in this case, and the tentative ruling and the minute order, neither of which mentioned the commercial speech exemption, we reject Sanderson and Taylor's claim that the trial court's ruling must be read as having found the commercial speech exemption applied. Sanderson and Taylor's motion to dismiss the appeal is therefore denied.

DISCUSSION

I.

STANDARD OF REVIEW

We review an order granting or denying a special motion to strike de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) "We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the

7

evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

"Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

II.

*NERIUM AND OLSON'S STATEMENTS DID NOT CONCERN A MATTER OF PUBLIC INTEREST.*

A cause of action is subject to a special motion to strike if it arises from "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) Sanderson and Taylor's causes of action all arise from written and oral statements available via the Internet. The only element of the test in dispute is whether the complained-of statements were made in connection with an issue of public interest.

The issue of domestic violence is one of public interest. (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 238.) Contrary to Nerium and Olson's argument, however, this does not mean any statement in any context accusing someone of committing domestic violence is protected by the anti-SLAPP statute. Indeed, California cases uniformly hold to the contrary.

8

"We have said that section 425.16 'does not provide a definition for "an issue of public interest," and it is doubtful an all-encompassing definition could be provided. However, the statute requires that there be some attributes of the issue which make it one of public, rather than merely private, interest. A few guiding principles may be derived from decisional authorities. First, "public interest" does not equate with mere curiosity. [Citations.] Second, a matter of public interest should be something of concern to a substantial number of people. [Citation.] Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. [Citation.] Third, there should be some degree of closeness between the challenged statements and the asserted public interest [citation]; the assertion of a broad and amorphous public interest is not sufficient [citation]. Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort "to gather ammunition for another round of [private] controversy . . . ." [Citation.] Finally, "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." [Citation.] A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people. [Citations.]' [Citation.]" (*Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1546-1547.)

In this case, there was little, if any, connection between the challenged statements and the claimed public interest in preventing or punishing those who have committed acts of domestic violence. Additionally, the focus of Olson's and Burdick's statements was not to advance the public discourse on domestic violence, or to protect the public from alleged perpetrators of domestic violence, but merely to advance Nerium and Olson's private dispute with Sanderson and Taylor. That these statements are not entitled to special protection under section 425.16 is evidenced by a review of other California cases addressing similar issues.

9

In *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1127-1128, the defendant and the plaintiff were both token collectors; the defendant accused the plaintiff of stealing the defendant's tokens, with the purpose of ousting the plaintiff from the token-collecting community. In response to the plaintiff's complaint for defamation, the defendant filed a special motion to strike, which was denied. (*Id.* at p. 1129.) The appellate court concluded the defendant's statements were not covered by section 425.16, subdivision (e)(3) or (4), although they involved potential criminal conduct. "Defendant did not report his suspicions to law enforcement, and there is no evidence that he intended to pursue civil charges against plaintiff. Rather, it is alleged that defendant began a private campaign, so to speak, to discredit plaintiff in the eyes of a relatively small group of fellow collectors. Since the record does not support a conclusion that plaintiff is a public figure or that he has thrust himself into any public issue, defendant's accusations against plaintiff related to what in effect was a private matter. Under the circumstances, the fact that defendant accused plaintiff of criminal conduct did not make the accusations a matter of public interest. [¶] Simply stated, causes of action arising out of false allegations of criminal conduct, made under circumstances like those alleged in this case, are not subject to the anti-SLAPP statute. Otherwise, wrongful accusations of criminal conduct, which are among the most clear and egregious types of defamatory statements, automatically would be accorded the most stringent protections provided by law, without regard to the circumstances in which they were made—a result that would be inconsistent with the purpose of the anti-SLAPP statute and would unduly undermine the protection accorded by paragraph 1 of Civil Code section 46, which includes as slander any false and unprivileged communication charging a person with a crime, and the California rule that false accusations of crime are libel per se [citations]." (*Weinberg v. Feisel*, *supra*, at pp. 1135-1136.)

In *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924-925, the court held not all

10

allegations of unlawful workplace activity at publicly financed institutions are matters of public interest. And, in *Kurwa v. Harrington, Foxx, Dubrow & Canter, LLP* (2007) 146 Cal.App.4th 841, 848-849, two doctors had entered into a business relationship establishing a medical corporation, and the medical corporation had entered into a relationship with a health management organization (HMO). When the doctors' relationship soured, the attorneys for one doctor wrote to the HMO advising it the other doctor—the plaintiff—had lost his medical license, prompting the plaintiff to sue. The appellate court held that although the provision of health care is a matter of great public interest, the attorneys' statement to the HMO was a private matter between the principals of the medical corporation and the HMO, not a matter of public interest.

*Cross v. Cooper* (2011) 197 Cal.App.4th 357, on which Nerium and Olson rely, is distinguishable. The plaintiff homeowner sued the defendant tenants for telling a potential home buyer's agent that a registered sex offender lived nearby. (*Id.* at pp. 365-366.) The appellate court held the trial court should have granted the defendants' special motion to strike because "preventing child sexual abuse and protecting children from sexual predators are issues of widespread public interest" (*id.* at p. 375), and disclosure of information regarding a sex offender in the neighborhood "was closely and directly related to specific issues of great interest to the general public" (*id.* at p. 378). Here, Nerium and Olson's statements were not closely and directly related to the prevention of or punishment for domestic violence.

Nerium and Olson suggest the trial court erred by focusing on the subjective purpose behind their making of the statements in question, rather than the objective content of those statements. In other words, they argue that in considering a special motion to strike, the court must look only at the actual words stated, not at the context in which they were made. Another panel of this court rejected the same argument in *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 42-43, in which a dietary supplement manufacturer was sued for unfair competition and violation of the Consumer

11

Legal Remedies Act for allegedly making inaccurate statements regarding its products' ingredients on the product labels and on its Web site. This court affirmed the trial court's denial of a special motion to strike, in part, because the list of a product's ingredients on a label or a Web site was commercial speech; although the speech was related to issues of public interest—public health and weight management—the product ingredient lists were not intended to be a part of the public health dialogue, but rather were intended solely to sell the defendant's supplements. "Twin Labs argues its list of ingredients should be protected under section 425.16 because it is speech 'in connection with a public issue.' [Citation.] This argument fails for two reasons. First, the language 'in connection with a public issue' modifies earlier language in the statute referring to the acts in furtherance of the constitutional right of free speech. The phrase cannot be read in isolation. Thus, Twin Labs' reliance on an argument that its list of product ingredients is immunized because it pertains to a public health issue—weight management—fails. [¶] Second, while matters of health and weight management are undeniably of interest to the public, it does not necessarily follow that all lists of ingredients on labels of food products or on the manufacturers' Web sites are fully protected from legal challenges by virtue of section 425.16. 'Advertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues.' [Citation.] Here, the list of Ripped Fuel's ingredients on the bottle labels and on Twin Labs' Web site was not participation in the public dialogue on weight management issues; the labeling on its face was designed to further Twin Labs' private interest of increasing sales for its products. [Citation.] Twin Labs' commercial speech was not made 'in connection with a public issue' as that phrase is used in section 425.16." (*Id.* at pp. 47-48; see *Weinberg v. Feisel*, *supra*, 110 Cal.App.4th at p. 1136 [circumstances under which allegedly defamatory statements are made determines whether the protections of the anti-SLAPP statute apply].)

12

Nerium and Olson's citations to cases holding the plaintiff's subjective intent in filing the lawsuit is not properly considered in a special motion to strike do not change our decision. (See *Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 65; *JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1521.) Those cases do not address whether the context in which the defendant's statements are made can help determine whether those statements are protected by the anti-SLAPP statute.

With respect to the allegedly defamatory statements regarding multiple Social Security numbers, Nerium and Olson's special motion to strike was unsupported by any evidence.[4] Nerium and Olson submitted a request to the trial court to take judicial notice of two online news stories addressing the number of people possessing more than one Social Security number. The trial court denied the request for judicial notice.[5] Nerium and Olson argue on appeal that the trial court erred by refusing to take judicial notice of those documents. We disagree. Evidence Code section 452, subdivision (h), allows a trial court to take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Whether the possession of multiple Social Security numbers is an issue of public concern is subject to dispute and is

[4] Nerium and Olson also argue the special motion to strike should have been granted because defamation based on Social Security numbers was pled in a single cause of action with defamation based on domestic violence allegations. Because we have concluded the special motion to strike was properly denied based on the domestic violence allegations, we need not address this argument.

[5] Nerium and Olson also asked the trial court to take judicial notice of a government report regarding noncitizens with multiple Social Security numbers, and two pages from the United States Social Security Administration Web site, regarding requests for new Social Security numbers and explaining why one report might show a person has multiple Social Security numbers. On appeal, Nerium and Olson do not argue that the trial court abused its discretion by denying the request for judicial notice, or request that this court take judicial notice of those documents.

not easily verified, certainly not by reference to the documents submitted by Nerium and Olson. The trial court did not abuse its discretion in denying the request for judicial notice of these documents.

Nerium and Olson suggest on appeal that the fact the information was published on the Internet is a fact not reasonably subject to dispute, and which can be easily verified. While this might be true, the availability of the information is irrelevant to any issue before the trial court or this court.

The trial court correctly determined the causes of action did not arise from protected activity, and the special motion to strike was therefore properly granted. We need not consider whether Sanderson and Taylor met their burden to prove a probability of success on the merits.

DISPOSITION

The order is affirmed. Respondents to recover costs on appeal.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

14