Filed 8/6/24  Ha v. Maeder CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JANE HA,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>AIVY TRAN MAEDER et al.,<br><br>    Defendants and Appellants. | G062000<br><br>(Super. Ct. No. 30-2022-01264588)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Elizabeth Grace, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Doll Amir & Eley, Michael M. Amir and Lloyd Vu for Defendants and Appellants.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, Ekwan E. Rhow, Thomas R. Freeman, Nick Purcell, Joyce J. Choi; Bird Marella Rhow Lincenberg Drooks & Nessim, Ekwan E. Rhow, Thomas R. Freeman, Christopher J. Lee and Joyce J. Choi for Plaintiff and Respondent.

\*          \*          \*

This appeal is from the denial of an anti-SLAPP motion.[1] The underlying action arises from a dispute over ownership of a medical spa between two business partners. The dispute became so heated that, according to the complaint, confederates of Dr. Peter Newen (one of the business partners) came to the business to belligerently harass plaintiff Jane Ha (the other business partner). This allegedly involved defaming Ha to employees and patients, as well as physically disrupting the business by, among other things, stealing supplies and products, and taking over the telecommunications system.

For reasons that are not apparent in our limited record, in this action Ha has sued the confederates of Dr. Newen, not Dr. Newen himself. She asserted causes of action for aiding and abetting breach of fiduciary duties, defamation, and intentional interference with prospective economic advantage. As damages, she alleged that defendants' actions scuttled a purchase offer from a venture capital firm that would have personally netted her $30 million.

Defendants filed an anti-SLAPP motion, which the trial court denied. Defendants contend their alleged actions were protected activity because they involved, among other things, telling patients and employees that it was illegal for Ha to own a medical spa because she did not have a medical license. The unlicensed practice of medicine, defendants argue, is an "issue of public interest" to which they contributed. (Code Civ. Proc.,

---

[1] "SLAPP" is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)

§ 425.16, subd. (e)(4).)[2]  The trial court found that the alleged speech, in context, arose out of a business dispute and lacked any meaningful connection to an issue of public interest.  We agree and affirm the order.

FACTS

I. *The Complaint*

The complaint alleges as follows:

Ha and Dr. Newen co-own two businesses together.  The first is TIC Aesthetic, LLC (TIC), a medical spa.  Ha owns 49 percent, and Dr. Newen owns 51 percent.  However, they have equal voting power and are the only two members on the board of directors.  The second is IPSC, LLC (IPSC), a surgery center.  Ha and Dr. Newen are each 50 percent owners.  Dr. Newen wholly owns a related entity, Image Plastic Surgery Center, a Medical Corporation (Image Plastic Surgery), which is a plastic surgery business.

The three entities operated as an integrated business.  IPSC owns the surgery center where the business operates.  TIC administratively operates the medical spa facilities in Irvine, San Clemente, Huntington Beach, and Downey.  Where appropriate, we will collectively refer to these entities as the businesses.

The businesses grew rapidly.  TIC, which was founded in 2019, took in $15 million in revenue in 2021.  Image Plastic Surgery also grew from a fledgling business to a multimillion-dollar business.  As a result of this success, multiple private equity firms became interested in purchasing the businesses.

---

[2] All statutory references are to the Code of Civil Procedure.

3

One firm in particular, Alium Capital Partners LLC (Alium), showed significant interest in purchasing the businesses, and submitted a letter of intent (LOI) to purchase TIC and its affiliated entities, IPSC, and Image Plastic Surgery on December 29, 2021. The LOI stated that Alium was impressed with TIC's rapid growth and accompanying success and was "'equally struck by the amazing culture and true team environment exhibited by the management team.'" The LOI valued "Alium's offer to purchase TIC and the affiliated entities at $68 million, [comprised of] $53 million in cash and an additional $15 million in incentives based on" the businesses achieving their projected earnings before interest, taxes, depreciation, and amortization in 2022 and 2023.

According to the complaint, "Despite the obvious benefits to TIC and [Image Plastic Surgery] from this potential sale, Dr. Newen became increasingly spiteful of Ms. Ha and of the fact that she would financially benefit as a result. Exacerbated by personal issues and his increasing alcohol use, he also became jealous of the observations made by Alium, which recognized Ms. Ha's central role in the success of the businesses."

As a result, Dr. Newen recruited defendants in carrying out a campaign of harassment to try and oust Ha from the businesses. The defendants include Aivy Tran Maeder, Jennifer Lee Quach, James Shin, Ashley Roh, and Yen T. Lu also known as Kaitlyn Lu.

"[O]n May 5, 2022, Defendants Maeder and Quach—who have no authority relating to TIC—held an impromptu meeting of TIC employees at the direction of Dr. Newen and proceeded to yell at and threaten TIC staff during normal business office hours in the presence of patients and social media influencers. Soon after, the police were called on to the premises due to

the threats and harassment of Defendants Maeder and Quach. All TIC staff were instructed to leave the premises by Ms. Ha in order to ensure the safety of TlC staff." "At Dr. Newen's direction, Defendant Quach also told IPSC and TIC employees and patients that Ms. Ha had been fired as CEO of IPSC, and that Defendant Quach had taken over as interim CEO, despite no such action having been properly taken by IPSC's Board. Defendant Quach then became hostile to TIC employees and made offensive and inappropriate remarks in the presence of patients such that those employees were uncomfortable, anxious, and unable to do their jobs. Defendant Maeder became even more hostile, verbally threatening, abusing, and screaming at TIC employees, causing them to fear for their safety to the point where law enforcement needed to again become involved and TIC employees hid in the stairwell."

"On May 6, 2022, Defendants tampered with the surveillance systems, computers, phones, and other electrical devices that facilitate the operations of TIC."

"On May 10, 2022, Defendant Roh was observed moving TIC surveillance cameras, while Defendant Lu was observed recording employees in the workplace without their consent. It was also discovered that Defendant Lu attempted to steal pharmaceutical drugs from TIC and facilitated the tampering of security surveillance systems, computers, iPads, phones, and medical records. Although Defendants Roh and Lu were terminated from TIC on May 11, 2022, as a result of their behavior, they continued to misrepresent themselves as employees and injectors of TIC, and placed inventory orders, illegally accessed electronic medical records, and engaged with patients purportedly on behalf of TIC, including by performing injections. Defendants Roh and Lu were acting without any corporate authority and under the

5

illegal direction of Dr. Newen in order to control TIC against Ms. Ha's rights and wishes and to sabotage the sale to Alium."

"Defendant Shin gave Dr. Newen access to TIC's phone account, which allowed Dr. Newen to secretly forward Ms. Ha's calls to Defendant Maeder. Defendant Maeder then defamed Ms. Ha to a patient who called looking for her, saying that Ms. Ha was breaking the law and running a fraudulent company. Defendant Shin has also misrepresented himself as a technology manager for TIC in order to gain control over its accounts and electronics. He has misappropriated and now illegally controls TIC's intellectual property including the imagecenter.info domain and email server, cyber security admin dashboards, and patient records and photos. Defendant Shin is not an employee of TIC and had no authority to be interfering with its operations. Instead, he did so at Dr. Newen's direction in order to damage the company and sabotage the potential sale to Alium."

As to defamation, the complaint alleges, "Defendant Maeder told TIC employees that Ms. Ha was stealing money from Dr. Newen and otherwise breaking the law, was 'churning' patients, and was holding Dr. Newen 'hostage.' Defendant Quach also told employees that Ms. Ha had been fired as CEO of IPSC and that Defendant Quach had been named interim CEO, when no such termination had been properly effected." "On May 12, 2022, Dr. Newen instructed his assistant, Defendant Shin, to reroute customer calls to Ms. Ha's number to Defendant Maeder. He then instructed Ms. Maeder to inform TIC customers that Ms. Ha was not qualified to be CEO of TIC, was participating in improper and illegal activities, was 'running a fraudulent company,' and was practicing medicine without a

6

license. Defendant Maeder's defamation of Ms. Ha resulted in a customer threatening to report TIC to the Better Business Bureau."

II. *Procedural History*

The complaint was filed in June 2022, asserting causes of action for aiding and abetting breach of fiduciary duties, defamation, and intentional interference with prospective economic advantage. After answering the complaint, defendants filed an anti-SLAPP motion to strike the complaint.

The court denied the motion. Citing *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133 (*FilmOn*), the court concluded "that the context of the allegations here, arising from a dispute between two business partners, do not 'contribute to the public debate' regarding unlicensed practice of medicine." Because the court concluded that the complaint was not based on protected conduct, the court did not proceed to the second step of the anti-SLAPP analysis to determine whether Ha had produced evidence demonstrating a probability of prevailing on the merits. Defendants appealed from the order denying the anti-SLAPP motion.

DISCUSSION

Defendants argue that the conduct described in the complaint qualifies as a public issue because they constitute "communications regarding the qualifications and conduct of those providing medical services to the public." We review the court's ruling de novo and conclude it did not err in denying the anti-SLAPP motion. (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1250.)

The anti-SLAPP statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 67.) Section 425.16, subdivision (e) defines an "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue'" as including four categories, only one of which is relevant here: "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id.*, subd. (e)(4).) Subdivision (e)(4) is sometimes called the catchall provision.

"The inquiry under the catchall provision . . . calls for a two-part analysis rooted in the statute's purpose and internal logic. First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech. [Citation.] Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is

8

at the latter stage that context proves useful." (*FilmOn, supra,* 7 Cal.5th at pp. 149-150.) This is because "virtually always, defendants succeed in drawing a line—however tenuous—connecting their speech to an abstract issue of public interest." (*Id.* at p. 150.) "But the catchall provision demands 'some degree of closeness' between the challenged statements and the asserted public interest." (*Ibid.*) "'[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.'" (*Ibid.*)

"Our courts have ably distilled the characteristics of 'a public issue or an issue of public interest.'" (*FilmOn, supra,* 7 Cal.5th at p. 149.) In particular, public issues often fall under the following categories: statements about a person or entity in the public eye, "conduct that could directly affect a large number of people beyond the direct participants [citations] or a topic of widespread, public interest [citation]." (*Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924.) Additionally, "the focus of the speaker's conduct should be the public interest rather than a mere effort 'to gather ammunition for another round of [private] controversy. . . .'" (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132-1133.)

Here, we are not persuaded that the speech in question was about an issue of public interest. Defendants contend the relevant public interest is "the qualifications and conduct of those providing medical services to the public." In support of the notion that this is an issue of public interest, defendants rely principally on *Yang v. Tenet Healthcare, Inc.* (2020) 48 Cal.App.5th 939 (*Yang*). There, a doctor sued a hospital and various individuals for defamation (*id.* at p. 943) because the defendants made public

9

statements that the doctor "was not 'qualified or competent,' that she 'rendered care below applicable standards of practice,' that her 'ethics' were 'below acceptable standards,' and that she was 'dangerous' to her patients and others." (*Id.* at p. 947.) The court held that the public issue implicated was "the qualifications, competence, and professional ethics of a licensed physician." (*Ibid.*)

What distinguishes *Yang* from the present case, however, is that *Yang* involved actual medical procedures negligently performed by a physician. (See *Healthsmart Pacific, Inc. v. Kabateck* (2016) 7 Cal.App.5th 416, 428-429 [allegations of a conspiracy among doctors to install counterfeit hardware in thousands of patients in exchange for a personal kickback implicated a public issue].) The present case, by contrast, involves a claim that Ha violated regulations prohibiting a nonphysician from owning a medical spa. There is no indication in the record that Ha personally performed medical services. Whether the ownership structure of a particular medical spa violated such regulations simply is not an issue of widespread public interest. Moreover, it is clear from the record that defendants were not attempting to participate in a public debate, but instead were allegedly attempting to wrest control of the business from Ha, which is a purely private affair. Accordingly, the trial court did not err in denying the anti-SLAPP motion.

## DISPOSITION

The order denying defendants' anti-SLAPP motion is affirmed.
Ha is entitled to costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


GOETHALS, ACTING P. J.


DELANEY, J.