Filed 8/29/23  Truong v. Tran CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MANH VAN TRUONG et al., | |
| Plaintiffs and Respondents, | G061703 |
| v. | (Super. Ct. No. 30-2021-01237262) |
| TIEN DUNG TRAN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, John C. Gastelum, Judge.  Affirmed.  Motion to dismiss.  Denied.

Mark S. Rosen and Dina L. Nguyen for Defendant and Appellant.

Hoyt E. Hart II for Plaintiffs and Respondents.

\*          \*          \*

Defendant Tien Dung Tran, the owner of two YouTube channels, appeals from an order denying his special motion to strike plaintiffs Manh Van Truong (Mike)[1] and Meiji Truong's complaint pursuant to Code of Civil Procedure section 425.16,[2] the anti-SLAPP statute. He contends plaintiffs' claims, which include defamation and intentional and negligent infliction of emotional distress, arise from protected activity because the statements he allegedly made on YouTube came after plaintiffs voluntarily put themselves in the public spotlight in the local Vietnamese-American community. We conclude the evidence in the record does not demonstrate the targeted comments were made in connection with an issue of public interest. Accordingly, we affirm the trial court's order denying defendant's anti-SLAPP motion.

## FACTS

Plaintiffs and defendant are members of the Vietnamese-American community in Orange County. Plaintiffs own and operate several home improvement related businesses. Defendant owns two YouTube channels for which he creates video content. According to defendant, his channels feature "current events and almost anything of interest to the Vietnamese-American community." The complaint refers to defendant's YouTube content as primarily "Vietnamese community gossip."

Following purported statements made by defendant about plaintiffs on his YouTube channels, plaintiffs sued defendant for defamation, intentional infliction of emotional distress and negligent infliction of emotional distress. The complaint alleged defendant "began a public campaign of harassment and defamation" against plaintiffs and their family members after plaintiffs appeared on a Vietnamese news channel to thank a well-known Vietnamese couple—Nguyen Phuong Hang (NPH) and Huynh Uy Dung— for their charity-related work in Vietnam. Although the original complaint did not

---

[1] When the context requires, we use the plaintiffs' first names only for the sake of clarity; no disrespect is intended.

[2] All further statutory references are to the Code of Civil Procedure.

include the specific false statements, it said the remarks conveyed the following about Mike: (1) he committed insurance fraud; (2) he "is a [c]ommunist supporter who conspires with Vietnamese gangsters to attack America"; (3) he files lawsuits against others based on false claims; and (4) he "has cheated many people." The complaint further alleged defendant's YouTube content stated Meiji "was as bad as Mike", the statements about Mike applied equally to Meiji, and Meiji was "a monster, hooker, slut, [and] cheater."

Plaintiffs filed a first amended complaint, which is the current operative complaint. Among other changes, the amended complaint specifies the exact statements defendant supposedly made about Mike. They include[3]: (1) "'I know this is your "trick", you set up traps to sue people, and cheated on insurance claims, me and Pho Bolsa TV owner once fell victim to your traps when you invited me to record a video of your store that had been attacked'"; (2) "'Here in the United States and around the world, there are many, many, many people devised schemes to get insurance money. ok schemes like burning down the factory, then create an alibi, blame this person for leading this person to attack, blame the other person for leading the other to attack, And here mr "mu" (sic. refering to Mike) is doing it with Dung'"; (3) "'Mike was receiving money from people on the Communist side, right?, Collusion with some people on the Communist side to attack America, this is clear evidence. Obviously, ladies and gentlemen, take 1 to 2 million dollars, is this woman a communist? yes[']"; (4) "'there's really big insurance for the warehouse , after that they burn the warehouse, the insurance pays. For that purpose, "mu ba ria" several times sued the neighbor'"; (5) "'Through the invitation of Mr. Mu Ba Ria, to come and shoot the pictures, the tapes . . . His words so that he can buy things for the things only he knows and then he fights back and harm me[ ]'"; and

---

[3] The statements in the first amended complaint are in English, but plaintiffs allege defendant originally made them in Vietnamese. We directly quote plaintiffs' allegations, with no modifications made thereto.

(6) "'because of $1 million, you seek to cause me trouble, you sided with Mrs. "Hung Nang" (sic meaning the horny Hang), then you set me up, you claimed left and right in order to benefit from certain shady deals[.]'"

Nine days after plaintiffs filed the amended complaint, defendant filed a special motion to strike the complaint pursuant to the anti-SLAPP statute. The moving papers stated plaintiffs' counsel had previously indicated an intent to file an amended complaint, the amended complaint had not yet been filed, and defendant was filing his motion out of "an abundance of caution" to ensure it was timely.

In declarations supporting his motion, defendant provided information concerning his YouTube channels, past interactions with plaintiffs, and observations of plaintiffs' activities in the Vietnamese community. Regarding the YouTube channels, defendant relayed his audience is composed primarily of Vietnamese-Americans, a population which he estimates to include roughly three million people in the United States, with approximately 300,000 living locally in Orange County. One channel has approximately 132,000 subscribers and the other has about 90,000 subscribers, but sometimes the total views of his videos exceed the number of subscribers.

With respect to plaintiffs, defendant narrated a series of events that began a few months before the 2020 United States presidential election. In August or September 2020, Mike contacted defendant asking if he could assist in setting up a TV channel at Mike's business warehouse, and the two discussed how the location could be set up for filming. Thereafter, as a leading supporter in the local Vietnamese-American community of then presidential candidate Donald Trump, Mike organized a large Trump rally. He participated in planning meetings, at which he and his wife were interviewed by multiple Vietnamese-American YouTube channels, including defendant's.

In October 2020, defendant interacted with plaintiffs at their home and in the community. Specifically, Mike invited defendant to interview him at his home "regarding his political opinions and his Trump artifacts." He allowed defendant to film

4

his home and photos, as well as Mike and his family. Plaintiffs also volunteered to be filmed by defendant and others during several pro-Trump rallies, with Mike being interviewed by defendant more often than Meiji. Defendant explained he interviewed Mike "because [Mike] was a vigilant supporter of the Trump administration and [defendant's] viewers were interested in politics, the Trump campaign, and in knowing who was supporting the Trump administration." And, according to defendant, plaintiffs knew the videos would be posted on highly viewed YouTube channels.

During the next two months, Mike called defendant twice concerning supposed bullet holes at Mike's business warehouse. On the first occasion, the day before the 2020 presidential election, Mike asked defendant and another highly viewed YouTube channel to come film. He agreed to have the interview livestreamed and the recording posted on defendant's channel. The next day, Mike requested defendant remove the recorded content; defendant did so. On the second occasion, Mike advised defendant his business was shot at again, but defendant chose not to do an interview.

From January through November 2021, Mike continued to voluntarily appear on YouTube channels, including Quoc Vo News which has roughly 240,000 subscribers. Defendant perceived Mike liked the drama and publicity.

In November 2021, certain events took place which, from defendant's perspective, shocked the American-Vietnamese community. NPH, who the complaint alleges plaintiffs publicly thanked for charity-related work and who defendant describes as the "wife of a well[-]known former communist member of the parliament of Vietnam and billionaire", praised plaintiffs on her YouTube channel. She thereafter made various statements that were heavily critical of Vietnamese-Americans and the United States government.

At a viewer's request, defendant agreed to do a YouTube segment concerning NPH's comments. After discussing the comments with the guest viewer, defendant read a statement from another viewer who claimed to have heard Mike say on

5

Quoc Vo News that he was against "all YouTubers who oppose NPH." Defendant then reminded Vietnamese-American supporters of NPH's insulting comments. He also relayed an anecdotal story and made a remark about Mike and those at Quoc Vo News who support NPH in relation to the story.

Plaintiffs opposed the anti-SLAPP motion, submitting multiple declarations on their behalf. Four declarations were from people who stated they viewed defendant's YouTube videos and confirmed he made the statements alleged in the first amended complaint. Mike's declaration detailed his family's escape from communist Vietnam, the falsity of defendant's statements about him and his family, and the alleged personal and business-related fallout caused by defendant's YouTube broadcasts. Meiji's declaration similarly detailed her family's escape from communist Vietnam and the falsity of defendant's statements.

Defendant's response to plaintiffs' opposition was limited to addressing the viability of plaintiffs' claims. Among other things, defendant appeared to contest whether the alleged defamatory statements were made, and he opined about plaintiffs' motivation for filing the lawsuit. He provided dozens of pages of text messages between him and Mike, as well as purported transcripts of two YouTube broadcasts—one done by himself and the other done by Mike. Defendant's reply did not provide any further discussion of the applicability of the anti-SLAPP statute.

Following a hearing on the anti-SLAPP motion, the trial court issued an order denying it in full. The court concluded defendant did not meet his burden of showing plaintiffs' claims arise from protected activity, as defined by the anti-SLAPP statute. Specifically, defendant did not show the alleged statements were made in connection with an issue of public interest.

Defendant timely appealed.

6

## DISCUSSION

Defendant asserts the trial court erroneously found the anti-SLAPP statute does not apply to plaintiffs' claims. He argues plaintiffs' self-established public position in the local Vietnamese-American community makes them public figures, and because of that status they have no legal recourse when it comes to statements made about them. Based on the record before us, we disagree.

*Motion to dismiss appeal*

After defendant filed his opening brief on appeal, plaintiffs filed a motion seeking to have the appeal dismissed as moot. They argue for the first time on appeal that the trial court's anti-SLAPP order was void ab initio because defendant's anti-SLAPP motion was not directed at the operative complaint (the first amended complaint) but instead was directed at the then non-operative original complaint. Plaintiffs' argument lacks merit under the circumstances.

We agree with plaintiffs that "'an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading.'" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884.) We also agree the filing of an amended complaint may sometimes moot a motion directed at a prior complaint. (See, e.g., *State Comp. Ins. Fund v. Superior Court* (2010) 184 Cal.App.4th 1124, 1131 [motion for summary adjudication]; *People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 506 [demurrer].) However, we do not agree the filing of the first amended complaint precluded the trial court from ruling on defendant's anti-SLAPP motion in this case.

It is undisputed defendant's anti-SLAPP motion was directed at the original complaint and plaintiffs filed the first amended complaint a little more than one week before defendant filed his motion. But, plaintiffs' amendments did not meaningfully alter the alleged conduct to which defendant's motion was directed. The amendments simply

7

articulated the specific statements purportedly made by defendant, instead of relying on the general nature of the statements as had the original complaint. And unsurprisingly, it appears from the record plaintiffs and the trial court proceeded as if the motion was directed at the amended complaint. Plaintiffs filed declarations in support of their opposition which claimed to confirm defendant made the exact statements listed in the amended complaint. And in its ruling, the court recognized the amended complaint clarified the specific statements made, but also stated the clarification did not change the substance of the allegations.

These circumstances distinguish this case from *JKC3H8 v. Colton* (2013) 221 Cal.App.4th 468 (*Colton*), on which plaintiffs rely. In that case, the plaintiff filed an amended complaint less than two hours prior to the defendant filing an anti-SLAPP motion directed at the original complaint. (*Id*. at pp. 472–473.) The amendments eliminated from the complaint all allegations of activity purportedly protected by the anti-SLAPP statute. (*Id*. at p. 479.) As a result, the appellate court concluded there were no causes of action arising from protected activity to strike at the time the defendant's motion was filed, meaning the motion was moot. (*Ibid*.)

Here, unlike in *Colton*, the amendments to plaintiffs' complaint did not withdraw allegations of protected activity. They simply made the allegations more exact, meaning the arguments in defendant's anti-SLAPP motion were equally applicable to the amended complaint. No practical purpose would have been served had the trial court required defendant to re-file his anti-SLAPP motion to address the amended complaint. The court's consideration of the anti-SLAPP motion was therefore appropriate, notwithstanding the filing of the first amended complaint. For all these reasons, Plaintiff's motion to dismiss the appeal is denied.

8

*Anti-SLAPP legal principles and standard of review*

"The Legislature enacted section 425.16 in response to 'a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619.) The special motion to strike provided for in the statute is "'intended to resolve quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest.'" (*Ibid.*) By legislative direction, the statute is to "be construed broadly." (§ 425.16, subd. (a).)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

"On appeal, we review the motion de novo and independently determine whether the parties have met their respective burdens. [Citations.] . . . [W]e consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citation.] However, we do not weigh credibility or compare the weight of the evidence." (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 371.)

*Protected activity*

Contending the trial court erred in concluding the alleged statements fall outside the scope of the anti-SLAPP statute, defendant invokes two categories of protected activity. Section 425.16, subdivision (e)(3) protects "any written or oral

9

statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."  Subdivision (e)(4) covers "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  Plaintiffs contend these public interest related categories do not apply to any of the alleged statements for several reasons.

In *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149–152 (*FilmOn.com*), the Supreme Court outlined a two-part analysis for determining whether activity falls within the scope of the section 425.16, subdivision (e)(4), "catchall" provision.  The same analysis applies to a determination under subdivision (e)(3) of the statute given the identical "issue of public interest" language.  (See *Bernstein v. LaBeouf* (2019) 43 Cal.App.5th 15, 22–23 [applying *FilmOn*'s analytical framework in context of purported protected activity under subdivisions (e)(3) and (e)(4)].)

"First, we ask what 'public issue or [ ] issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech." (*FilmOn.com, supra*, 7 Cal.5th at p. 149.)  The statute does not define these terms, but caselaw provides guidance.  Among the matters to consider are "whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants' [citation]; and whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion' [citation], or 'affect[ed] a community in a manner similar to that of a governmental entity.'"  (*Id.* at pp. 145–146; see also *Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 919–924 [discussing attributes of public issues and issue of public interest]; *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132–1133 (*Weinberg*) [providing "guiding principles" for same].)

"Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (*FilmOn.com, supra*,

10

7 Cal.5th at pp. 149–150.)  A key consideration is the context in which the speech occurred, including the audience, the speaker and the communication's purpose.  (*Id.* at pp. 151–152.)  Overall, "'some degree of closeness' between the challenged statements and the asserted public interest [is required].  [Citation.] . . . '[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate."  (*Id.* at p. 150.)

Defendant contends plaintiffs were quasi-public figures "in positions of prominence" who "actively sought public attention."  So his argument goes, plaintiffs' self-created stature in the local Vietnamese-American community renders comments made about them matters of public interest.

While caselaw recognizes "there is a public interest which attaches to people who by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities" (*Carlisle v. Fawcett Publications, Inc.* (1962) 201 Cal.App.2d 733, 746; see also *Weinberg, supra*, 110 Cal.App.4th at p. 1131 ["[A] public figure is a person who has assumed a role of special prominence in the affairs of society, who occupies a position of persuasive power and influence, or who has thrust himself [or herself] to the forefront of a particular public controversy in order to influence the resolution of the issues involved"]), there are major factual and legal flaws in defendant's contentions.

To begin, there is no evidence Meiji sought public attention by way of social media or otherwise.  Notably, defendant's motion filed in the trial court did not include any argument about Meiji, let alone any argument about her being a quasi-public figure.  This is fatal to defendant's anti-SLAPP motion as it relates to Meiji's claims.  (See *Bonni, supra*, 11 Cal.5th at p. 1009 [defendant bears burden of proof at first stage of anti-SLAPP analysis].)

As for Mike, although there is some evidence he sought social media attention, the evidence in the record does not establish he achieved celebrity-like status

11

even in the local community.  (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1230 (*D.C.*) [rejecting public figure status due to no evidence of pervasive fame or notoriety]; Cf. *Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1042 [finding public interest among Finnish public in prominent Finnish businessman and his Bahamas residence, both of which previously received extensive publicity in Finland]; *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 807–808 [finding public interest in participant's role as contestant on nationally televised reality show with high viewership]; *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 238–240 [finding public interest in nationally known advertising consultant who worked for high profile state and federal politicians regarding morality issues, including domestic violence].)  That defendant calls Mike a "well-known figure in the Vietnamese community in Orange County" does not make it so.

Even assuming Mike was some type of public figure, it would not make any comment about him a matter of public interest.  "No authority supports the . . . broad proposition that anything said or written about a public figure or limited public figure in a public forum involves a public issue." (*D.C., supra*, 182 Cal.App.4th at p. 1226; see also *Albanese v. Menounos* (2013) 218 Cal.App.4th 923, 936 [rejecting proposition that any statement about person in public eye is matter of public interest].)  Rather, in the very least, consideration must be paid to the content of the targeted speech or conduct, the scope of a person's public figure status, and the extent to which there was an ongoing controversy, dispute or discussion involving or relating to the person at the time the alleged protected activity took place.  (See *FilmOn.com, supra*, 7 Cal.5th at pp. 145–146; *Bernstein v. LeBeouf* (2019) 43 Cal.App.5th 15, 23 (*Bernstein*); *D.C., supra*, 182 Cal.App.4th at p. 1226.)

Here, defendant's evidence shows one of the topics Mike was publicly vocal about was his support of a particular candidate in the 2020 presidential election. However, the alleged defamatory statements were made nearly one year after the election

took place and there is no evidence Mike continued to publicly engage in such political discourse after the election.

It also appears Mike was publicly vocal about his support of NPH and her husband shortly before defendant made the alleged defamatory statements. The evidence is conflicting as to whether Mike's showing of support specifically concerned charity-related work or whether it was broader. Even so, none of the purported statements relate to the then existing controversy involving NPH. At the time, NPH was in the spotlight because of offensive comments she made about Vietnamese-Americans and the United States government—topics which, based on the evidence, could be considered matters of public interest in the Vietnamese-American community. In contrast, defendant's supposed statements concerned insurance fraud, communism, and the characterization of certain personal dealings in which Mike was allegedly involved.

Defendant claims the amount of attention a YouTube broadcast receives is a strong indication of public interest. But, without more, social media viewership does not demonstrate statements are made in connection with an issue of public interest. Focusing on viewership alone would run counter to the Supreme Court's directive that evaluating whether speech implicates a matter of public interest requires looking to the content of the speech. (*FilmOn, supra*, 7 Cal.5th at p. 149.) Further, caselaw has made clear mere curiosity is not indicative of a public issue (*Weinberg, supra*, 110 Cal.App.4th at p. 1132), and "a private dispute does not become a matter of public interest simply because it [is] widely communicated to the public" (*Bernstein, supra*, 43 Cal.App.5th at p. 24).

This case is distinguishable from *Hoang v. Tran* (2021) 60 Cal.App.5th 513, on which defendant relies. There, the plaintiff sued a worldwide news source for defamation based on an article about him and his business activities published on social media. (*Id*. at pp. 520–521.) The appellate court concluded the anti-SLAPP statute applied because plaintiff and his business dealings were a matter of public interest.

13

(*Id*. at p. 527.)  Evidence demonstrated plaintiff, who identified himself on social media as a public figure, had achieved celebrity status in the Vietnamese community due to his rise as a self-made billionaire, the massive press coverage given to his affair with a famous young actress and model, and his use of his position to influence public opinion about his multi-billion-dollar business.  (*Id*. at pp. 523, 527–529.)  Although the court discussed the many public comments to the published article, it did so to underscore the plaintiff's stature in the Vietnamese community that was revealed by other evidence and to show how the article furthered the discourse concerning the plaintiff, his wealth, his business, and his controversial relationship.  (*Id*. at pp. 527–529.)

Because defendant did not meet his burden of demonstrating the targeted statements fall within the scope of activity protected by the anti-SLAPP statute, the trial court properly denied his motion.

## DISPOSITION

The order is affirmed.  Plaintiffs are entitled to their costs on appeal.


DELANEY, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


SANCHEZ, J.

14