Filed 10/28/24  Entrepreneur Media v. Smith CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ENTREPRENEUR MEDIA, INC., | C095545 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2021-00295096-CU-PAG-DS) |
| v. | |
| SCOTT SMITH, | |
| Defendant and Appellant. | |

Motions to strike strategic lawsuits against public participation (anti-SLAPP) cover claims based on statements made "in connection with a public issue."  (Code Civ. Proc.,[1] § 425.16, subds. (b)(1), (e).)  Plaintiff Entrepreneur Media, Inc. sued defendant Scott Smith[2] for defamation and other claims based on statements defendant made

---

[1]     Undesignated section references are to the Code of Civil Procedure.

[2]     Plaintiff also sued a corporate entity defendant owns.  The trial court found the Secretary of State and the Franchise Tax Board suspended this entity and it is therefore

1

regarding plaintiff's trademark enforcement practices and other business practices. Defendant filed an anti-SLAPP motion, which the trial court denied. We affirm the trial court's denial, concluding defendant failed to establish the statements involved a public issue. We also affirm the trial court's order denying defendant's motion to disqualify plaintiff's counsel.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a complaint on February 23, 2021, alleging eight causes of action including defamation and various forms of interference with economic and contractual interests. The complaint explained that plaintiff relies on "revenue from its more than 500,000 subscribers to *Entrepreneur*® magazine worldwide . . . and visitors to its *entrepreneur.com* website, which ha[d] recently averaged more than fifteen million unique users and more than thirty-nine million page views per month." Plaintiff also sells advertising space on these platforms. Plaintiff alleged defendant engaged in "a campaign of harassment, defamation, and tortious interference" to "discredit and malign [plaintiff] and its upper management" after plaintiff successfully sued defendant for trademark infringement.

The complaint alleged three different types of statements supporting its causes of action. The first were social media posts. Plaintiff alleged defendant made more than 300 "posts making negative reference to [plaintiff] and *Entrepreneur*® magazine." The posts had three main themes: (1) Defendant alleged plaintiff "fraudulent[ly]" attacked entrepreneurs for using the word "entrepreneur" and included the phrase

---

"precluded from participating in the present litigation unless and until it cures the default(s) [that] resulted in the suspension of its powers to operate." (Underscoring omitted.) Defendant does not present any evidence or argument on appeal that these defaults have been cured. We thus do not consider this corporate entity as a party to this appeal. (*Tabarrejo v. Superior Court* (2014) 232 Cal.App.4th 849, 861 ["a corporation that has had its powers suspended 'lacks legal capacity to prosecute or defend a civil action during its suspension' "].)

"#trademarkbully" in the posts; (2) defendant asserted plaintiff used racist terms, "such as the N-word"; and (3) plaintiff was in financial trouble because it published fewer issues in 2020, had "huge legal bills," and "many print advertisers cancell[ed] ads due to [the] COVID-19 pandemic."

The second type of statements were e-mails defendant sent to advertisers "that made a series of false and damaging statements intended to make [plaintiff's] advertisers pull their advertising from *Entrepreneur®* magazine." These e-mails included similar statements as the posts, asserting the magazine was in financial trouble, that plaintiff is " 'a "trademark bully" that continues to spend large amounts of its dwindling fund[s] on very high-priced attorneys for [its] extortionist legal attacks against small businesses and entrepreneurs,' " and that plaintiff for years subjected defendant to racist attacks. Some of the e-mails also alleged, " '[I]t appears that [plaintiff] has been ripping off its subscribers to the tune of millions of dollars (and others such as writers and advertisers[]),' " and that " '[plaintiff] has stolen/misappropriated at least $2.5[ million] from its subscribers in just the last several years.' "

Finally, plaintiff's complaint alleged defendant sent e-mails to organizers of events in which plaintiff's employees participated. These e-mails included similar accusations that "[plaintiff] has made a 'fraudulent, monopolistic, abusive and selective trademark claim on the word "entrepreneur" ' " and plaintiff's employees make and defend racist comments against defendant. Defendant also asserted in these e-mails that plaintiff "hacked" into defendant's financial accounts.

On August 16, 2021, defendant filed an anti-SLAPP motion seeking dismissal of plaintiff's entire complaint, alleging plaintiff's causes of action were "premised on [defendant's] constitutionally protected conduct and communications." The motion stated it relied on defendant's declaration, exhibits, and a request for judicial notice but no such documents were included in the motion. In defendant's reply, defendant asserted he does "not necessarily need to proffer any evidence because the burden falls squarely

3

on plaintiff," but attached the previously referred to evidence to the reply. (Boldface & capitalization omitted.)

On November 3, 2021, the trial court denied defendant's anti-SLAPP motion. The trial court did not consider the evidence attached to defendant's reply because plaintiff did not have an opportunity to address it. Thus, based on the parties arguments and an assessment of relevant cases, the trial court first found defendant failed to carry his "initial burden of demonstrating the conduct giving rise to the causes of action in the complaint is in fact protected under the anti-SLAPP statute by virtue [of] its connection with 'an issue of public interest' and as a result, th[e] motion must be denied in its entirety." (Underscoring omitted.) The trial court then made alternative findings that plaintiff established the commercial speech exception and plaintiff met its burden of showing a probability of prevailing on the merits.

Defendant appeals.

DISCUSSION

I

*The Trial Court Did Not Err In Denying Defendant's Anti-SLAPP Motion*

The anti-SLAPP statute, section 425.16, protects against "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) It accomplishes this by subjecting to a special motion to strike any causes of action arising from a person's right of petition or free speech "in connection with a public issue." (§ 425.16, subd. (b)(1).) "When considering a special motion to strike under section 425.16, the court engages in a two-step process. [Citation.] First, the court considers whether the defendant has established that the challenged claim for relief arises from an activity protected under section 425.16, subdivision (e). [Citation.] Second, the court considers whether the plaintiff has demonstrated the claim has minimal merit. [Citation.] If the defendant shows that the plaintiff's claim for relief arises from a protected activity and the plaintiff

4

fails to demonstrate minimal merit, the court must strike the claim for relief." (*Miszkewycz v. County of Placer* (2024) 99 Cal.App.5th 67, 73.)

There are four categories of protected activity under section 425.16, subdivision (e). The two relevant to this appeal are the third and fourth categories: "[A]ny written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or . . . any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) Both require the protected activity to be "in connection with an issue of public interest," which the statute does not define, "and it is doubtful an all-encompassing definition could be provided." (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 (*Weinberg*).)

This appeal wades into what is a public issue under section 425.16. Defendant contends the statements underlying plaintiff's complaint concern a public issue because "[t]he statements were not made to simply air a private dispute but to warn the public about [plaintiff's] business practices and its attacks on small businesses and entrepreneurs." We disagree.

"We review de novo an order granting or denying an anti-SLAPP motion. [Citation.] We must first determine whether the defendant has established that the challenged claim arises from activity protected under section 425.16, meaning that the activity itself forms the basis for the claim. [Citations.] Courts should analyze 'each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected.' " (*Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 904.)

In analyzing what defines " 'an issue of public interest,' " another panel of this court summarized a "few guiding principles . . . derived from decisional authorities. First, 'public interest' does not equate with mere curiosity. [Citations.] Second, a matter of public interest should be something of concern to a substantial number of people.

5

[Citation.] Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. [Citations.] Third, there should be some degree of closeness between the challenged statements and the asserted public interest [citation]; the assertion of a broad and amorphous public interest is not sufficient [citation]. Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort 'to gather ammunition for another round of [private] controversy . . . .' [Citation.] Finally, 'those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.' [Citation.] A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people." (*Weinberg*, *supra*, 110 Cal.App.4th at pp. 1132-1133.)

Defendant's statements underlying plaintiff's claims can be grouped into five topics: (1) plaintiff's trademark enforcement policies, (2) plaintiff's financial position, (3) plaintiff's racism towards defendant, (4) plaintiff's hacking of defendant's financial accounts, and (5) plaintiff's " 'ripping off' " subscribers. Defendant has failed to establish any of these are public issues under the above principles because defendant failed to provide any evidence his statements relate to a public interest. Though defendant contends otherwise, the trial court properly did not consider defendant's evidence presented with his reply brief. (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537 ["The general rule of motion practice, which applies here, is that new evidence is not permitted with reply papers"].)

Defendant instead relies on conjecture with assertions like, "The public has an interest in a company that engages in discrimination and fraud against consumers." It may be true the public is generally interested in combatting fraud, but defendant must show a substantial portion of the public is specifically interested in combating plaintiff's discrimination, fraud, or unfair trademark practices. As our Supreme Court has warned, "[T]he focus of our inquiry must be on 'the specific nature of the speech,' rather than on

6

any 'generalities that might be abstracted from it.' [Citation.] Defendants cannot merely offer a 'synecdoche theory' of public interest, defining their narrow dispute by its slight reference to the broader public issue." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 152.) And defendant posting these statements to a public site alone is insufficient. (*Weinberg*, *supra*, 110 Cal.App.4th at p. 1133.) Thus, defendant's failure to provide any evidence of a specific public interest in the dealings of plaintiff is fatal to his anti-SLAPP motion.

*Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500 supports this conclusion. There, a former director of a foundation sued the foundation and its directors for wrongfully terminating him after disputes about the foundation's management and financial position. (*Id*. at pp. 1502-1504.) The foundation and directors filed an anti-SLAPP motion asserting removal of the former director "was in connection with a matter of public interest because (1) the [f]oundation is in the public eye, (2) it is supervised by the Attorney General, and (3) its assets are held for the benefit of the public." (*Id*. at p. 1504.) The appellate court reversed the trial court's grant of the motion because the foundation and other directors "presented *no evidence of widespread public interest* in the financial oversight or governance of the [f]oundation. They submitted no news articles indicating that the public was interested in these issues, or even in the dispute among directors of the [f]oundation." (*Id*. at pp. 1508-1509, italics added; see *id*. at p. 1511.) The appellate court also found insufficient the facts the "[f]oundation is one of the largest charitable organizations in Southern California, subject to public oversight by the Attorney General, and that it donates a substantial amount of money every year to persons and entities that affect millions of Southern Californians" because this does not transform the private disputes between the directors into "a public issue or an issue of public interest. . . . Were the law otherwise, every act of the governing body of a large organization would constitute a matter of public interest." (*Id*. at p. 1509.)

7

This analysis is directly applicable here. Defendant is contending, without evidence, the public is necessarily interested in his statements about plaintiff's operations and practices due to the subject matter and the size of the organization. Defendant argues, "[Plaintiff] asserted itself into the public eye, and is more than just a 'family' business; i.e., over 40 years in business and over 500,000 subscribers worldwide." But this is supposition without support. There is no evidence of a public interest in plaintiff's trademark enforcement policies, plaintiff's financial position, plaintiff's alleged racism towards defendant, plaintiff's alleged hack of defendant's financial accounts, and plaintiff's " 'ripping off' " subscribers. As found in *Donovan*, defendant must present evidence of widespread public interest in these issues even for a large organization that affects many people; defendant did not.

Defendant argues his statements were a public concern because they were consumer protection information. "Consumer information, . . . when it affects a large number of persons, also generally is viewed as information concerning a matter of public interest." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898.) But again, defendant provides no evidence this is the context in which he made those statements. Context matters in determining whether a statement is made in connection with a public issue. As our Supreme Court has said: "[A] court must consider the context as well as the content of a statement in determining whether that statement furthers the exercise of constitutional speech rights in connection with a matter of public interest." (*FilmOn.com Inc. v. DoubleVerify Inc.*, *supra*, 7 Cal.5th at p. 149.)

Context is also important for consumer protection information as shown by the case defendant relies on: *Carver v. Bonds* (2005) 135 Cal.App.4th 328. There, a podiatrist sued a newspaper and athletes based on statements the athletes made in the newspaper about the podiatrist's and other doctors' work treating athletes. (*Id*. at pp. 341-342.) The appellate court found the statements involved a public issue because they were " 'consumer protection information.' " (*Id*. at p. 343.) The court explained,

"The article warned readers not to rely on doctors' ostensible experience treating professional athletes, and told what it described as 'a cautionary tale' of [the podiatrist] exaggerating that experience to market his practice. Since the statements at issue served as a warning against [the podiatrist's] method of self-promotion, and were provided along with other information to assist patients in choosing doctors, the statements involved a matter of public concern." (*Id.* at p. 344.)

Defendant contends *Carver* "is essentially what had transpired here." We disagree because defendant has not presented any evidence the statements underlying plaintiff's complaint were made in the context of promoting consumer protection. In *Carver*, the newspaper article presented an evaluation of the doctor's services, alongside information about other doctors, to aid patients in choosing doctors. (*Carver v. Bonds*, *supra*, 135 Cal.App.4th at p. 344.) As stated in another case cited by defendant, the key to consumer protection information being a public issue is when the "statements were a warning not to use [the] plaintiffs' services . . . to aid consumers choosing among" service providers. (*Wilbanks v. Wolk*, *supra*, 121 Cal.App.4th at p. 900.) Defendant provides no evidence this was the purpose of the statements or that his statements could be used to such an end. Defendant's statements largely malign plaintiff's operations such as trademark policies, financial position, or racist statements towards defendant. These do not pertain to plaintiff's magazine or advertising, or the services it provides to consumers. Thus, without additional evidence, defendant's statements are unlike the evaluation of the doctor's services in *Carver*.

The statements about plaintiff hacking defendant's financial accounts or " 'ripping off' " subscribers could have been a warning to consumers. But these could have also been made to individuals to air a private disagreement between plaintiff and defendant. Defendant does not provide evidence he made these statements to subscribers to warn them about plaintiff's services. Defendant does not even explain how these statements warn consumers, such as the manner in which plaintiff is " 'ripping off' " subscribers and

9

the basis for this position, like the article in *Carver*. Simply making challenging statements about a company does not automatically render them consumer protection information. Otherwise, all negative statements made about a company would automatically be a public issue and step one of the anti-SLAPP analysis would be unnecessary in commercial contexts. We find no law supportive of this broad rule and defendant presents none. (See *Consumer Justice Center v. Trimedica Internat., Inc.* (2003) 107 Cal.App.4th 595, 602 [disapproving of finding all commercial false advertising speech of public interest "absent facts which truly make that product a matter of genuine public interest"].)

Without necessary contextual evidence, we conclude defendant has not established his statements in plaintiff's complaint are in connection with a public issue. Defendant therefore has failed to establish the first step of the anti-SLAPP analysis and we consequently affirm the trial court's order denying his anti-SLAPP motion.[3]

---

[3]    Defendant makes several additional arguments that lack factual and legal support and are without merit. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error"].) These include defendant's argument the "*Communications Decency Act of 1996*, 47 U.S.C. 230 protects his publications." (Some italics omitted.) This is clearly incorrect as defendant is not being treated as a publisher "of information provided by another information content provider," he is being sued for his own statements. (*Dyroff v. Ultimate Software Grp., Inc.* (9th Cir. 2019) 934 F.3d 1093, 1097-1098.) Or that defendant is immune under Civil Code section 47, subdivision (b) for making statements in connection with any legislative, judicial, or other official proceeding authorized by law. Defendant's assertions that "his communications were not only for law enforcement officials, but in court proceedings as well" are unsupported with any evidence he made these statements to law enforcement officials or during a court proceeding. (See *Weinberg*, *supra*, 110 Cal.App.4th 1126-1127 [the "defendant did not report his suspicions to law enforcement, and there is no evidence that he intended to pursue civil charges against [the] plaintiff"].)

10

## II

*The Trial Court Did Not Err In Denying Defendant's Disqualification Motion*

Defendant also challenges the trial court's denial of his motion to disqualify the law firm representing plaintiff. Defendant filed a disqualification motion alleging that he approached an attorney, Seth Wiener, in June and July 2016 to represent him and his significant other in a matter against plaintiff and disclosed confidential information in the process. Defendant provided screenshots of the Web site for the law firm representing plaintiff and other Web sites that listed Wiener as an attorney of the law firm representing plaintiff at the time of the present action. In response, the law firm representing plaintiff provided a declaration stating Wiener left the firm in mid-2019, but the firm "inadvertently kept . . . Wiener's name on its website. His name has now been removed." Wiener also provided a declaration stating the same thing and that all work he did for defendant and defendant's significant other was through Wiener's own law practice and not the firm representing plaintiff.

The trial court denied defendant's motion under rule 1.18 of the State Bar Rules of Professional Conduct (rule 1.18), finding: "Wiener is no longer associated with [the firm]," and thus, when the firm "undertook representation of [plaintiff] in 2021, . . . Wiener [had] not been working with the firm for two years." Though defendant provided evidence Wiener was listed on Web sites as still being at the firm, the issue had been corrected and the other Web sites were "outdated."

Defendant contends the trial court erred by relying on "self-serving declarations" without actual evidence of Wiener's exit from the firm. Defendant contends his evidence Wiener "basically 'switched' sides on [defendant] and worked for his adversary" establishes plaintiff's counsel violated rule 1.18. Plaintiff does not address this issue, stating it "is not aware of any basis to raise this matter before" this court. Plaintiff is incorrect. Defendant timely filed a notice of appeal from the trial court denying his motion to disqualify plaintiff's counsel, which is an appealable order. (*URS Corp. v.*

11

*Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872, 878 ["Of course, orders granting or denying attorney disqualification motions are immediately appealable in California state courts"].) And this court filed the notices of appeal from the order denying disqualification and the order denying the anti-SLAPP motion under the same case number. We shall therefore address this issue, but conclude defendant has not proven error.

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143.)

Rule 1.18 prohibits any lawyer from representing "a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received from the prospective client" confidential information. (Rule 1.18(b), (c).) "If a lawyer is prohibited from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter." (Rule 1.18(c), asterisks omitted.)

Defendant asserts the screenshots he provided the trial court showing Wiener was employed at the law firm representing plaintiff is "substantial evidence as to a conflict of interest." This confuses the standard we must apply. The trial court was not required to accept defendant's evidence merely because it was substantial, and nor do we. We instead must review the trial court's finding for substantial evidence. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, *supra*, 20 Cal.4th at p. 1143.) The trial court considered defendant's evidence but found the countervailing declarations, including Wiener's own declaration, persuasively established Wiener was not at the firm when it represented plaintiff in this matter. These declarations are

12

substantial evidence supporting the trial court's factual findings.  We therefore conclude the trial court did not abuse its discretion by denying defendant's disqualification motion.

DISPOSITION

The trial court's orders denying the motion to strike and motion to disqualify counsel are affirmed.  Defendant shall pay costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)-(2).)



/s/_____
ROBIE, Acting P. J.



We concur:



/s/_____
MAURO, J.



/s/_____
DUARTE, J.